[805 NYS2d 313]

In the Matter of Baby Boy C. Jeffrey A., et al., Respondents; Tohono O'odham Nation, Intervenor-Appellant.

Appellate Division, First Department, December 6, 2005

## APPEARANCES OF COUNSEL

*Rosin & Reiniger*, New York City (*Benjamin J. Rosin* and *Samuel F. Daughety* of counsel), for appellant.

*Magovern & Sclafani*, New York City (*Frederick J. Magovern* of counsel), for respondents.

*Law Office of Randall S. Carmel*, Hastings-on-Hudson (*Randall S. Carmel* of counsel), *Law Guardian*.

*Bertram E. Hirsch*, Great Neck; *Jack F. Trope*, Rockville, Maryland; and *Mark C. Tilden*, Boulder, Colorado, for St. Regis Mohawk Tribe and others, amici curiae.

### OPINION OF THE COURT

GONZALEZ, J.

This is an adoption proceeding in which the Tohono O'odham Nation, a federally recognized Indian tribe, seeks to intervene pursuant to the Indian Child Welfare Act of 1978 (ICWA; 25 USC § 1901 *et seq.*) upon the ground that this is a "child custody proceeding" involving an "Indian child," as those terms are defined in ICWA. Family Court denied intervention under ICWA, instead adopting the judicially created "existing Indian family" (EIF) exception, which avoids the application of ICWA in circumstances where the court determines that the child is not part of an existing Indian family. Family Court also concluded that the EIF exception was necessary to uphold the constitutionality of ICWA where, as here, the child and his family lack significant ties to an Indian tribe or culture.

The EIF exception to ICWA is a matter of first impression in the appellate courts of this State and its validity has been the subject of conflicting decisions from other jurisdictions' courts. Based on our review of these authorities and the submissions of the parties, the law guardian and amici, we conclude that the EIF exception directly conflicts with the express language and purpose of ICWA, as well as the rationale of the United States Supreme Court's decision in *Mississippi Band of Choctaw Indians v Holyfield* (490 US 30 [1989]). Therefore, we decline to accept it as the law of New York.

We further find that although ICWA is generally applicable to this proceeding, it does not expressly authorize tribal intervention in adoption proceedings as a matter of right (25 USC § 1911 [c]). Nevertheless, because the Tribe has a significant interest in having ICWA applied to this adoption proceeding, it should be permitted to intervene under CPLR 1013. Accordingly, the matter should be remanded for further proceedings on the adoption petition, which must be evaluated in accordance with ICWA's substantive provisions.

Facts

Baby Boy C. was born in California on March 22, 2004 to Rita C. (Rita) and her boyfriend Justin W. (Justin). Rita is one-half Native American Indian and is a registered member of the Tohono O'odham Nation tribe (Tribe). Justin is Caucasian and Jewish. On April 13, 2004, Rita and Justin executed extrajudicial consents in Arizona to the termination of their parental rights and the adoption of the child by petitioners Jeffrey A. and Joshua A., who have been certified as qualified adoptive parents

in New York. Included in Rita's executed consent were representations that she was a member of the Tribe, that the child may be an "Indian child" under ICWA and that she was aware of the placement preferences in ICWA but desired that they be waived, and that a finding of good cause be entered to permit the child's adoption by petitioners.

On April 26, 2004, the Superior Court of Arizona certified that the consents to the adoption and relinquishment of parental rights were validly made, and it subsequently issued an order terminating Rita's and Justin's parental rights. The Tribe did not appear in the Arizona proceedings, although it apparently had notice of them. Meanwhile, petitioners took custody of the child, returned to New York and commenced this adoption proceeding in April 2004.

On June 23, 2004, the Tribe moved to intervene in the adoption proceeding as a matter of right under ICWA, or, alternatively, pursuant to CPLR 1013.[1] The Tribe argued that Rita's relinquishment of her parental rights implicated the Tribe's right under ICWA to protect its relationship with its children, and that 25 USC § 1911 (c) conferred standing on the Tribe to intervene in this proceeding. In opposition, petitioners argued that ICWA was not applicable here since, under the EIF exception, ICWA's purpose of preserving Indian families and tribal culture was not served where the Indian child and parents have not maintained a significant relationship with the Tribe. Petitioners also contended that ICWA was constitutionally flawed in the absence of the EIF exception.

In a preliminary decision dated August 24, 2004 (5 Misc 3d 377 [2004]), Family Court found that the Tribe's motion to intervene could not be decided on the submitted papers. However, after analyzing the conflicting authorities, the court adopted the EIF exception, holding that it was necessary to uphold ICWA's constitutionality because otherwise it would not be rationally related to its goal of preserving tribal stability in situations where there was no existing Indian family (id. at 385). The court ordered a hearing at which the Tribe would have the burden of proving that the child was part of an existing Indian family. In the event the Tribe failed to meet this burden, the court indicated it would permit intervention under CPLR 1013 and hold a best interests hearing.

---

1. The Tribe informed Family Court of its intention to file a motion to intervene approximately one month earlier.

The court held the EIF hearing on October 1, 2004, and the primary witnesses were Rita and her mother, Elizabeth C.[2] The evidence showed that Elizabeth is a member of the Tribe and is presently employed as a supervisor in its Human Services Department. Rita's father is not Native American nor a member of the Tribe. Elizabeth's mother was 100% Tohono Indian, while her father was of Italian descent. Rita was born at the Phoenix Indian Medical Center at a time when it was open only to descendants of Native Americans. After her birth, she went through a baby ceremony at the reservation conducted by the Tribe's medicine man. Rita lived on the reservation from ages two to five, but otherwise spent most of her youth living in Phoenix with Elizabeth and Elizabeth's parents.[3] Rita has three brothers, all of whom are members of the Tribe, as are all of Elizabeth's relatives.

While growing up, Rita visited the reservation seven or eight times a year and her relatives who lived there also came to Phoenix to visit. When she was 12, Rita had a woman's ceremony, signifying the passage from childhood to womanhood, performed by the Tribe's medicine man. During her elementary and high school years, Rita attended non-Indian public schools. Rita went to a community college with financial assistance from the Tribe and also received mining and gaming distributions based on her membership in the Tribe.

Rita severed nearly all her ties to the Tribe as an adult. She has no interest in tribal policies and rarely visits the reservation. She has not participated in any Indian cultural events since was 12 years old and has no interest in them. She does not observe any Indian customs or practices and does not socialize with any members of the Tribe, except for her brothers. She has severed all contact with her maternal grandmother. Rita was married on two prior occasions to non-Indians in civil ceremonies. She had a child with each man and neither child is being raised in an Indian setting. Rita testified that she has no interest in the subject child being raised in the tribal culture.

In a posthearing decision dated October 26, 2004, Family Court found that ICWA did not apply since the Tribe failed to

---

2. Prior to commencement of the hearing, Elizabeth filed a petition for custody of the child, which was held in abeyance pending the outcome of the hearing. Subsequently, Elizabeth's petition was apparently abandoned and dismissed.

3. The record shows that Elizabeth's presence was intermittent and that Rita was raised primarily by Elizabeth's parents.

meet its burden of proving that the subject child was part of an "existing Indian family." The court found that Rita's ties to the Tribe were mainly in her childhood and adolescence, but that as an adult she had "divorced herself from the community affairs, politics and social and religious life of the Tribe," thereby demonstrating a "rejection of her Indian heritage." Rita's rejection of her own Indian heritage, in turn, "has acted to break the link between the Tribe and Rita's nuclear family."

The matter was subsequently set down for a best interests hearing. The parties rested on the existing record, after which the court issued an oral decision finding that it was in the best interests of the subject child for the proposed adoption to go forward. The written order being appealed was entered January 19, 2005, reflecting the above.

On March 25, 2005, this Court granted the Tribe's motion for leave to appeal Family Court's order and issued a stay of the adoption pending determination of the appeal. A Law Guardian was assigned to represent the subject child on appeal. On May 3, 2005, the St. Regis Mohawk Tribe, the National Indian Child Welfare Association and the Association of American Indian Affairs were granted leave as amici curiae to file a brief in support of the Tribe's position.

Discussion

On appeal, the Tribe makes three primary arguments. First, it contends that since the two statutory criteria for the application of ICWA were met, Family Court was required to apply its provisions, including those relating to tribal intervention and placement preferences. Second, it argues that the court erred in adopting the judicially created EIF exception because it is contrary to the plain language of ICWA and one of its core purposes of protecting and preserving the interests of Indian tribes in their children. Third, the Tribe argues that the court's constitutional analysis of ICWA is flawed in that it misapplies the rational basis test, which is the appropriate test for Indian legislation.

In support of Family Court's ruling, petitioners argue that the Tribe had no right to intervene under ICWA even if it applied; that Family Court properly determined that the EIF exception applied in this case as a basis to deny intervention; and that any error in applying the EIF exception was harmless since the Tribe was permitted to intervene and, in any event, the record established good cause to defeat the placement preferences in ICWA. We reverse.

ICWA was enacted by Congress in 1978 as a product of the rising concern in the mid-1970s over the effect on Indian children, families and tribes of abusive welfare practices that separated large numbers of Indian children from their families and tribes through adoption or foster care placement in non-Indian homes (*Mississippi Band of Choctaw Indians v Holyfield*, 490 US 30, 32 [1989]). ICWA's stated purpose is "to protect the best interests of Indian children and to promote the stability and security of Indian tribes and families by the establishment of minimum Federal standards for the removal of Indian children from their families and the placement of such children in foster or adoptive homes which will reflect the unique values of Indian culture" (25 USC § 1902).

According to the House Report accompanying ICWA, the Act "seeks to protect the rights of the Indian child as an Indian and the rights of the Indian community and tribe in retaining its children in its society" (HR Rep No. 1386, 95th Cong, 2d Sess, at 23 [1978]). ICWA seeks to achieve this goal by establishing "a Federal policy that, where possible, an Indian child should remain in the Indian community" and ensuring that Indian child welfare determinations are not based on "a white, middle-class standard which, in many cases, forecloses placement with [an] Indian family" (*id.* at 24). Chief among Congress's concerns was the inability of non-Indian child welfare workers to understand the role of the extended family in Indian society (*Holyfield* at 35 n 4).

Applicable Provisions of ICWA

ICWA includes core provisions in three distinct areas that are relevant to this appeal: applicability, jurisdiction and substantive standards. With respect to applicability, ICWA applies to all "child custody proceeding[s]" involving an "Indian child" (25 USC §§ 1903, 1911). ICWA defines "child custody proceeding" as including foster care placements, termination of parental rights proceedings, preadoptive placements and adoptive placements (25 USC § 1903 [1] [i]-[iv]). An "Indian child" is defined as "any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe" (25 USC § 1903 [4]).

ICWA sets out a dual jurisdictional scheme that turns on where the Indian child resides or is domiciled (25 USC § 1911). 25 USC § 1911 (a) vests Indian tribal courts with exclusive jurisdiction over any child custody proceeding involving an Indian

child who resides or is domiciled within the reservation of such tribe. 25 USC § 1911 (b), on the other hand, creates concurrent but presumptively tribal jurisdiction in the case of an Indian child not domiciled on the reservation. In this latter case, state courts "shall" transfer any proceeding for foster care placement or termination of parental rights to the tribal court unless "good cause" to the contrary is shown, either parent objects to the transfer or the tribe declines jurisdiction.

The key jurisdictional provision in this case is 25 USC § 1911 (c), which authorizes an Indian child's tribe to intervene at any point in state court proceedings for "foster care placement" or "termination of parental rights." ICWA defines termination of parental rights as "any action resulting in the termination of the parent-child relationship" (25 USC § 1903 [1] [ii]).

Finally, 25 USC § 1915 provides substantive standards for placement of Indian children in different types of child custody proceedings. 25 USC § 1915 (a), pertaining to adoptive placement proceedings, states: "In any adoptive placement of an Indian child under State law, a preference shall be given, in the absence of good cause to the contrary, to a placement with (1) a member of the child's extended family; (2) other members of the Indian child's tribe; or (3) other Indian families." These preferences have been described by the Supreme Court as "[t]he most important substantive requirement imposed on state courts" (*Holyfield* at 36).

Applicability of ICWA

■ Preliminarily, we note that the plain language of ICWA makes the Act applicable to this adoption proceeding. As noted, ICWA applies to any "child custody proceeding" involving an "Indian child" (25 USC § 1903 [1], [4]; *see Michael J., Jr. v Michael J., Sr.*, 198 Ariz 154, 156, 7 P3d 960, 962 [2000]; *In re Alicia S.*, 65 Cal App 4th 79, 83, 76 Cal Rptr 2d 121, 123 [1998]). Here, petitioners concede that the subject child is an Indian child and that this is a child custody proceeding. Thus, petitioners' argument that ICWA is inapplicable rests entirely on their claim that the EIF exception removes this proceeding from the Act. We therefore turn to the issue of whether the EIF exception should be accepted as a matter of New York law.

The EIF exception was first articulated by the Supreme Court of Kansas in *Matter of Adoption of Baby Boy L.* (231 Kan 199, 643 P2d 168 [1982]). *Baby Boy L.* involved an out-of-wedlock child born to a non-Indian mother and an Indian father, neither of whom maintained any connection to an Indian tribe or com-

munity. The mother voluntarily relinquished the child at birth for adoption by a specific non-Indian couple, who immediately filed a petition to adopt. Thereafter, the father and his tribe invoked ICWA for the purposes of permitting tribal intervention and challenging the adoption. The trial court held that ICWA did not apply, and then terminated the father's parental rights and ordered the adoption to proceed in the child's best interest (231 Kan at 203, 643 P2d at 173-174).

The father and the tribe appealed, and the Supreme Court of Kansas affirmed the finding that ICWA did not apply:

> "A careful study of the legislative history behind the Act and the Act itself discloses that the overriding concern of Congress and the proponents of the Act was the maintenance of the family and tribal relationships existing in Indian homes and to set minimum standards for the removal of Indian children from their existing Indian environment. It was not to dictate that an illegitimate infant who has never been a member of an Indian home or culture, and probably never would be, should be removed from its primary cultural heritage and placed in an Indian environment over the express objections of its non-Indian mother." (231 Kan at 205-206, 643 P2d at 175.)

Following *Baby Boy L.*, the EIF exception gained some acceptance in other state appellate courts that likewise concluded that the doctrine precluded application of ICWA in circumstances where an Indian child was not being removed from an existing Indian family or environment (*see Matter of Adoption of T.R.M.*, 525 NE2d 298 [Ind 1988], *cert denied sub nom. J.Q. v D.R.L.*, 490 US 1069 [1989]; *Matter of S.C.*, 1992 OK 98, 833 P2d 1249 [1992], *overruled by statute as stated in Matter of Baby Boy L.*, 2004 OK 93, 103 P3d 1099 [2004]; *Matter of Adoption of Crews*, 118 Wash 2d 561, 825 P2d 305 [1992]; *Rye v Weasel*, 934 SW2d 257 [Ky 1996]; *Hampton v J.A.L.*, 658 So 2d 331 [La Ct App, 2d Cir 1995], *cert denied* 662 So 2d 478 [La 1995], *cert denied* 517 US 1158 [1996]; *In re Morgan*, 1997 WL 716880, 1997 Tenn App LEXIS 818 [Ct App 1997]). The common rationale behind these decisions was that because Congress's primary goal in passing ICWA was to prevent the removal of Indian children from Indian families, that purpose would not be served by applying the Act to children who had never been a part of an existing Indian family.

The legal landscape surrounding the EIF exception changed in 1989, when the United States Supreme Court decided *Mississippi Band of Choctaw Indians v Holyfield* (490 US 30 [1989], *supra*). *Holyfield* involved twin babies born out of wedlock to parents who were both enrolled members of the petitioner tribe. Although both parents lived on the reservation, they traveled 200 miles away from the reservation for the birth. Shortly after, the parents signed consents to adoption to a specific non-Indian couple, who filed an adoption petition that was ultimately granted (*id.* at 37-38). The tribe moved to vacate the adoption decree on the ground that under ICWA, exclusive jurisdiction was vested in the tribal court. The trial court upheld the decree and the Supreme Court of Mississippi affirmed, finding that the children were not domiciled on the reservation since they had never been present there (*id.* at 39).

The United States Supreme Court reversed, holding that under federal domicile law, the children were domiciled on the reservation within the meaning of ICWA's exclusive tribal court jurisdiction provision, even though the children had never been physically present on the reservation (*id.* at 51-53).

Although domicile is not a disputed issue in this case, the Supreme Court's discussion in *Holyfield* regarding the relative interests of the parents, the child and the tribe in the application of ICWA has great significance. In rejecting the notion that ICWA could be avoided by the fact that the parents had "voluntarily surrendered" the child, the *Holyfield* court stated that tribal jurisdiction was not meant to be defeated by the actions of individual tribe members or parents, "for Congress was concerned not solely about the interests of Indian children and families, *but also about the impact on the tribes themselves of the large number of Indian children adopted by non-Indians*" (*id.* at 49 [emphasis added], quoting 25 USC § 1901 [3] ["there is no resource that is more vital to the continued existence and integrity of Indian tribes than their children"]).

The *Holyfield* court also emphasized that a major concern of Congress was the "detrimental impact" on the Indian children themselves of being placed outside their culture in non-Indian homes (*id.*). To this end, Congress made ICWA's jurisdictional and placement provisions applicable not only to involuntary removals of Indian children, but also to voluntary adoptions involving placement with non-Indian families "because of concerns going beyond the wishes of individual parents" (*id.* at 50).

In the wake of *Holyfield*, many state courts rejected the EIF exception on the ground that the doctrine was inconsistent with *Holyfield*'s express recognition of the tribal interests protected by ICWA, as well as ICWA's plain language (*see Matter of Adoption of T.N.F.*, 781 P2d 973, 977 [Alaska 1989], *cert denied sub nom. Jasso v Finney*, 494 US 1030 [1990] [reliance on judicially created EIF exception would undercut the interests of Indian tribes and children that Congress sought to protect]; *Matter of Adoption of Baade*, 462 NW2d 485, 489-490 [SD 1990] [rejecting EIF in light of *Holyfield*]; *Matter of Baby Boy Doe*, 123 Idaho 464, 849 P2d 925 [1993], *cert denied sub nom. Swenson v Oglala Sioux Tribe*, 510 US 860 [1993] [rejecting EIF exception as inappropriate judicially created doctrine to circumvent mandates of Act]).

Notwithstanding *Holyfield*, two districts of the California Court of Appeal not only adopted the EIF exception to ICWA, but also held that ICWA was unconstitutional absent the EIF exception (*see In re Bridget R.*, 41 Cal App 4th 1483, 49 Cal Rptr 2d 507 [2d Dist 1996], *cert denied sub nom. Cindy R. v James R.*, 519 US 1060 [1997]; *In re Alexandria Y.*, 45 Cal App 4th 1483, 53 Cal Rptr 2d 679 [4th Dist 1996]). In *Bridget R.*, the court held that ICWA does not apply to a voluntary termination of parental rights proceeding respecting an Indian child who is not domiciled on an Indian reservation unless the parents are of American Indian descent and "maintain a significant social, cultural or political relationship with their tribe" (41 Cal App 4th at 1492, 49 Cal Rptr 2d at 516). Otherwise, the *Bridget R.* court held, ICWA would violate the child's constitutional rights to due process and equal protection, and also usurp a power reserved to the states under the 10th Amendment to the United States Constitution (41 Cal App 4th at 1506-1510, 49 Cal Rptr 2d at 525-528; *see also In re Santos Y.*, 92 Cal App 4th 1274, 1314-1322, 112 Cal Rptr 2d 692, 724-731 [2d Dist 2001]).

The *Bridget R.* court's constitutional analysis rested on its determination that ICWA's application to an Indian child who was not part of an existing Indian family implicated both a fundamental right and suspect classification (41 Cal App 4th at 1506-1510, 49 Cal Rptr 2d at 525-528). The court found that a child had a fundamental right to placement in a stable and permanent home, thereby triggering strict scrutiny, which requires that the legislation serve a compelling governmental interest and be actually necessary and effective in accomplishing that purpose (*id.*). Although the court found that the compelling

interest prong had been met, it held that ICWA's purpose of preserving American Indian culture would not be served by applying it to children whose biological parents did not have a significant relationship with an Indian community (41 Cal App 4th at 1507, 49 Cal Rptr 2d at 526). Applying ICWA to remove such a child from a home in which he or she had formed familial bonds, the *Bridget R.* court determined, would violate the child's substantive due process rights (41 Cal App 4th at 1507-1508, 49 Cal Rptr 2d at 526-527).

*Bridget R.* also found that ICWA violated the child's equal protection rights because it required different treatment of Indian and non-Indian children who were similarly situated (41 Cal App 4th at 1508-1510, 49 Cal Rptr 2d at 527-528). It reasoned that although disparate treatment was not constitutionally offensive when it was based on the social, cultural and political relationships between Indian children and their tribes, where such "relationships do not exist or are very attenuated, the only remaining basis for applying ICWA rather than state law in proceedings affecting an Indian child's custody is the child's genetic heritage—in other words, race" (41 Cal App 4th at 1508, 49 Cal Rptr 2d at 527). Having found that ICWA implicated a race-based classification with respect to children whose family lacked sufficient connection to the tribe, the court applied strict scrutiny analysis, which required the legislation to be narrowly tailored to serve a compelling governmental purpose (*id.*). The *Bridget R.* court ruled that ICWA failed this test because its purpose would not be served by applying it to children with no Indian connection (41 Cal App 4th at 1509-1510, 49 Cal Rptr 2d at 528).

Lastly, the *Bridget R.* court noted that under the 10th Amendment, Congress exceeds its enumerated powers when it legislates in matters traditionally left to the states unless the legislation bears a substantial nexus to the enumerated power under which the legislation is enacted (41 Cal App 4th at 1510-1511, 49 Cal Rptr 2d at 528-529). Finding that jurisdiction over family relations is traditionally a power reserved to the states, the court concluded that no substantial nexus existed between the Indian Commerce Clause (US Const, art I, § 8 [3]) and child custody proceedings involving children whose families lacked a significant connection to Indian culture, resulting in a 10th Amendment violation (41 Cal App 4th at 1510-1511, 49 Cal Rptr 2d at 528-529).

No New York appellate court has considered the EIF exception to ICWA. However, a Surrogate in Westchester County and

the Family Court Judge in this case have done so, and in both instances declined to apply ICWA on the basis of the EIF exception. In *Matter of Baby Girl S.* (181 Misc 2d 117, 125 [1999]), the Westchester Surrogate declined to apply ICWA to an adoption proceeding under circumstances where the mother did not live on a reservation, she had voluntarily consented to the adoption when she relinquished the child at birth, the father had no Indian connections and the mother objected to the tribe's intervention, and the child had lived with the prospective adoptive parents throughout the pending court proceedings. In adopting the EIF exception, the Surrogate relied on the reasoning of the out-of-state cases that have adopted it, Congress's failure in 1978 to enact certain amendments that would have eliminated the EIF exception and a narrow reading of *Holyfield* that limited its application to the question of domicile (*id.* at 122-125).

Family Court's determination in this case (5 Misc 3d 377, *supra*), in addition to adopting the EIF exception and a narrow reading of *Holyfield*, also incorporated the constitutional analysis of *Bridget R.* in finding ICWA unconstitutional in the absence of the EIF exception (*id.* at 385). The court specifically found that ICWA was not "rationally related" to its goal of promoting stability of Indian tribes where children are born to Indian parents disconnected from their Indian roots (*id.*). The court explained:

> "[L]osing a child born to parents involved in tribal life is, in effect, losing part of a family that the tribe needs to retain, if it is to extend its current level of cultural growth into the next generation. Conversely, relinquishing control over a child born to parents uninvolved in Indian life costs the tribe nothing in terms of maintaining a stable level of cultural growth." (*Id.*)

Having considered the various arguments and authorities for and against the acceptance of the EIF exception,[4] we reject it as fundamentally inconsistent with both the plain language of

4. At present, 14 states have rejected the EIF exception by statute or case law (Alaska, *Matter of Adoption of T.N.F.*, 781 P2d 973 [1989], *cert denied sub nom. Jasso v Finney*, 494 US 1030 [1990]; Arizona, *Michael J., Jr. v Michael J., Sr.*, 198 Ariz 154, 7 P3d 960 [2000]; Idaho, *Matter of Baby Boy Doe*, 123 Idaho 464, 849 P2d 925 [1993], *cert denied sub nom. Swenson v Oglala Sioux Tribe*, 510 US 860 [1993]; Illinois, *In re Adoption of S.S.*, 252 Ill App 3d 33, 622 NE2d 832 [2d Dist 1993], *revd on other grounds* 167 Ill 2d 250, 657 NE2d 935 [1995]; Iowa, *In re R.E.K.F.*, 698 NW2d 147 [2005] and Iowa Code

(n. cont'd)

ICWA and one of its core purposes of preserving and protecting the interests of Indian tribes in their children. We also conclude that, contrary to Family Court's holding, ICWA is constitutional because it is rationally related to fulfilling this expressed purpose.

The starting point for any case of statutory interpretation must always be the statutory text itself, which is the "clearest indicator of legislative intent" (*Majewski v Broadalbin-Perth Cent. School Dist.*, 91 NY2d 577, 583 [1998]). Here, the provisions of ICWA clearly and unambiguously provide only two threshold requirements for applicability—the proceeding must be a "child custody proceeding" involving an "Indian child" (25 USC § 1903 [1], [4]). Significantly, the statutory definition of an "Indian child" depends on tribal membership or eligibility for

§ 232B.5[2]; Michigan, *In re Elliott*, 218 Mich App 196, 554 NW2d 32 [1996]; Montana, *Matter of Adoption of Riffle*, 277 Mont 388, 922 P2d 510 [1996]; New Jersey, *Matter of Adoption of a Child of Indian Heritage*, 111 NJ 155, 543 A2d 925 [1988]; North Dakota, *In re A.B.*, 2003 ND 98, 663 NW2d 625 [2003], *cert denied sub nom. Hoots v K.B.*, 541 US 972 [2004]; Oklahoma, *Matter of Baby Boy L.*, 2004 OK 93, 103 P3d 1099 [2004] and Okla Stat Ann, tit 10, §§ 40.1, 40.3; Oregon, *Quinn v Walters*, 117 Or App 579, 845 P2d 206 [1993], *revd on other grounds* 320 Or 233, 881 P2d 795 [1994]; South Dakota, *Matter of Adoption of Baade*, 462 NW2d 485 [1990]; Utah, *State in Interest of D.A.C.*, 933 P2d 993 [1997]; Washington, Wash Rev Code § 13.34.040 [3]; § 26.10.034 [1]; § 26.33.040 [1]).

Only seven jurisdictions have adopted it (Alabama, *S.A. v E.J.P.*, 571 So 2d 1187 [Ct Civ App 1990]; Indiana, *Matter of Adoption of T.R.M.*, 525 NE2d 298 [1988], *cert denied sub nom. J.Q. v D.R.L.*, 490 US 1069 [1989]; Kansas, *Matter of Baby Boy L.*, 231 Kan 199, 643 P2d 168 [1982]; Kentucky, *Rye v Weasel*, 934 SW2d 257 [1996]; Louisana, *Hampton v J.A.L*, 658 So 2d 331 [Ct App, 2d Cir 1995], *cert denied* 662 So 2d 478 [1995], *cert denied* 517 US 1158 [1996]; Missouri, *In Interest of S.A.M*, 703 SW2d 603 [Ct App 1986]; Tennessee, *In re Morgan*, 1997 WL 716880, 1997 Tenn App LEXIS 818 [Ct App 1997]), and subsequent rulings in Alabama and Indiana cast doubt on its continued viability in those states (*see S.H. v Calhoun County Dept. of Human Resources*, 798 So 2d 684 [Ala Ct Civ App 2001]; *Matter of D.S.*, 577 NE2d 572 [Ind 1991]).

Five of the six districts of the California Court of Appeal that have considered the EIF exception have split on the subject (*compare In re Junious M.*, 144 Cal App 3d 786, 193 Cal Rptr 40 [1st Dist 1983] [rejecting EIF], and *In re Alicia S.*, 65 Cal App 4th 79, 76 Cal Rptr 2d 121 [5th Dist 1998] [same], *with In re Bridget R.*, 41 Cal App 4th 1483, 49 Cal Rptr 2d 507 [2d Dist 1996] [adopting EIF and holding ICWA unconstitutional in absence of EIF], *In re Alexandria Y.*, 45 Cal App 4th 1483, 53 Cal Rptr 2d 679 [4th Dist 1996] [same], and *Crystal R. v Superior Ct.*, 59 Cal App 4th 703, 69 Cal Rptr 2d 414 [6th Dist 1997] [adopting EIF as matter of statutory construction]). Although the California Legislature has eliminated the EIF exception by statute (Cal Welf & Inst Code § 360.6; Cal Rules Ct rule 1439), the constitutional rulings in the Second and Fourth Districts render the state statutory enactments constitutionally suspect in those courts.

membership—not on the degree of connection with tribal culture. Most assuredly, the statute does not require that the Indian child be a part of an "existing Indian family," i.e., one that actively participates in tribal affairs or customs. Indeed, the word "existing" is not found anywhere in ICWA's definitions section and appears to have been supplied by judicial interpretation (*see Matter of Adoption of Baby Boy L.*, 231 Kan at 205-207, 643 P2d at 174-176).

Because Congress has clearly delineated the nature of the relationship between an Indian child and tribe necessary to trigger application of the Act, judicial insertion of an additional criterion for applicability is plainly beyond the intent of Congress and must be rejected (*see In re Alicia S.*, 65 Cal App 4th at 89-90, 76 Cal Rptr 2d at 128 [no threshold requirement in Act that child must have been part of existing Indian family or have particular type of relationship with tribe or heritage]; *In re A.B.*, 663 NW2d at 636 [EIF exception ignores plain language of ICWA which does not require child to be part of existing Indian family or family involvement with tribe]; *see also Matter of Baby Boy Doe*, 123 Idaho at 471, 849 P2d at 932 [EIF exception rejected because provisions of ICWA do not contain limitation based on where child is located]).[5]

Another problem with the EIF exception is that its acceptance would undermine the significant tribal interests recognized by the Supreme Court in *Holyfield*. The Supreme Court made it clear in *Holyfield* that Indian tribes have an interest in applying ICWA that is distinct from that of the child's parents, and that such parents may not unilaterally defeat its application by deliberately avoiding any contact with the tribe or reservation (490 US at 51-52). In many respects, that is what occurred in this case. By divorcing herself from tribal life and by putting her child up for adoption away from the reservation immediately after birth, Rita singlehandedly destroyed the notion of an "existing Indian family." If the EIF exception were

---

5. Petitioners rely on Congress's failure in 1987 to enact certain amendments to ICWA that would have expressly eliminated the EIF exception, reasoning that the failure of a legislature to change a known judicial interpretation of a statute is persuasive evidence of legislative intent (*see e.g. Matter of S.C.*, 1992 OK 98, 833 P2d at 1255, *overruled by Matter of Baby Boy L.*, 2004 OK 93, 103 P3d 1099 [2004]; *Hampton*, 658 So 2d at 335; *Rye*, 934 SW2d at 262). We find Congress's inaction equivocal in this instance, especially since Congress initially considered, but did not adopt, statutory language that would have codified the EIF exception (*see Michael J., Jr.*, 198 Ariz at 158, 7 P3d at 964).

applied in this instance, Rita would have succeeded in nullifying ICWA's purpose at the expense of the interests of the Tribe (*id.* at 51). However, as *Holyfield* recognized, Congress intended otherwise by specifically mandating that tribal interests be considered (*id.* at 52 ["protection of this tribal interest is at the core of the ICWA, which recognizes that the tribe has an interest in the child which is distinct from but on a parity with the interest of the parents"]; *see also Matter of Baby Boy Doe*, 123 Idaho at 470-471, 849 P2d at 931-932; *In re A.B.*, 663 NW2d at 636).

Nor can we agree with Family Court's statement that "relinquishing control over a child born to parents uninvolved in Indian life costs the tribe nothing." (5 Misc 3d at 385.) Where, as here, Rita has rejected Indian life and culture and, then, voluntarily relinquished her newborn Indian child to be adopted by a non-Indian couple, the detriment to the Tribe is quite significant—the loss of two generations of Indian children instead of just one.

The EIF exception also conflicts with the Congressional policy underlying ICWA that certain child custody determinations be made in accordance with Indian cultural or community standards (*see Holyfield*, 490 US at 34-35 [one of the most serious failings of the present system is that Indian children are removed from natural parents by nontribal governmental authorities who have no basis for intelligently evaluating the cultural and social premises underlying Indian home life and child rearing]; 25 USC § 1915 [d] [applicable standards "shall be the prevailing social and cultural standards of the Indian community"]).

The EIF exception is clearly at odds with this policy because it requires state courts to make the inherently subjective factual determination as to the "Indianness" of a particular Indian child or parent, a determination that state courts "are ill-equipped to make" (*In re Alicia S.*, 65 Cal App 4th at 90, 76 Cal Rptr 2d at 128). Since ICWA was passed, in part, to curtail state authorities from making child custody determinations based on misconceptions of Indian family life, the EIF exception, which necessitates such an inquiry, clearly frustrates this purpose (*Holyfield* at 34-35; *Quinn*, 117 Or App at 584 n 2, 845 P2d at 209 n 2; *D.A.C.*, 933 P2d at 999).

We also find that ICWA is not constitutionally infirm absent the EIF exception. Every act of Congress is entitled to a presumption of constitutionality and courts must refrain from

invalidating such enactments unless a clear showing is made that Congress has exceeded its constitutional bounds (*United States v Morrison*, 529 US 598, 607 [2000]; *see also Dalton v Pataki*, 5 NY3d 243, 255 [2005], *cert denied* — US —, 126 S Ct 742 [2005]; *Matter of Malpica-Orsini*, 36 NY2d 568, 570-571 [1975], *appeal dismissed sub nom. Orsini v Blasi*, 423 US 1042 [1976]).

The decisions finding ICWA unconstitutional without the EIF exception, such as *Bridget R.*, are premised on the existence of a fundamental right or suspect classification. We find that neither exists in this case. No one could seriously dispute the proposition that an Indian child, like any child, has a significant interest in maintaining a stable home environment. However, other than *Bridget R.* and its progeny, we are unaware of any authority holding that a child's "right" to a stable home environment in the context of adoptive placements is one of constitutional dimensions (*see generally San Antonio Independent School Dist. v Rodriguez*, 411 US 1, 33-34 [1973] [in determining whether a fundamental right exists, test is not relative societal significance or importance as compared to other rights, but whether the right is explicitly or implicitly guaranteed by the Constitution]).

The *Bridget R.* court derived such a "right" from a series of California Supreme Court cases that involved attempts by biological parents to reassert their parental rights after a finding of unfitness, and at a time when the child had gained a measure of stability in long-term foster care placement (*see In re Jasmon O.*, 8 Cal 4th 398, 878 P2d 1297 [1994], *cert denied sub nom. O'Hara v San Diego County Dept. of Social Servs.*, 514 US 1097 [1995]; *In re Marilyn H.*, 5 Cal 4th 295, 851 P2d 826 [1993]). In concluding that the children's fundamental interest in a stable and permanent placement outweighed the unfit parents' constitutionally protected right to the custody and companionship of the child, these courts elevated the children's interest to constitutionally protected status, unnecessarily in our view (*Jasmon O.*, 8 Cal 4th at 419, 878 P2d at 1307; *Marilyn H.*, 5 Cal 4th at 306, 851 P2d at 833). Notably, the primary constitutional right at issue in these cases was that of the parent, not the child, and none of the California cases, including *Bridget R.* and *Santos Y.*, identifies any United States Supreme Court precedent recognizing a constitutional right in favor of the child to a stable and permanent home (*see In re Santos Y.*, 92 Cal App 4th at 1314, 112 Cal Rptr 2d at 724-725; *see also*

Barbara Ann Atwood, *Flashpoints Under the Indian Child Welfare Act: Toward a New Understanding of State Court Resistance*, 51 Emory LJ 587, 639-640 [Spring 2002]). While we believe that a child's interest in stability and permanency is obviously a critical factor in making custody and placement determinations, we do not agree that this interest is entitled to constitutional protection.

Moreover, recognizing a constitutional right in this circumstance would be contrary to the longstanding principle in this state that adoption is strictly a creature of statute (*Matter of Jacob*, 86 NY2d 651, 657 [1995]; *see also Buckner v Family Servs. of Cent. Fla., Inc.*, 876 So 2d 1285, 1288 [Fla 2004] [under Florida law "adoption is not a right; it is a statutory privilege"]). Indeed, most courts that have considered the issue have refused to find a fundamental liberty interest in the relationship between a foster or prospective adoptive parent and the child in such parent's care (*see Lofton v Secretary of Dept. of Children & Family Servs.*, 358 F3d 804, 811 [11th Cir 2004], *cert denied* 543 US 1081 [2005] [there is no fundamental right to adopt or to be adopted]; *Mullins v State of Or.*, 57 F3d 789, 794 [9th Cir 1995] [whatever claim a prospective adoptive parent may have to a child, it does not rise to the level of a fundamental liberty interest]). Since the application of ICWA in this case abridges no fundamental right, petitioners' challenge to ICWA on substantive due process grounds must be evaluated under the rational basis test (*Vacco v Quill*, 521 US 793, 799 [1997]; *Romer v Evans*, 517 US 620, 631 [1996]).

We have no difficulty reaching the same conclusion regarding the appropriate test for petitioners' equal protection claim. The Supreme Court and other courts have consistently held that federal laws that treat Indians differently from non-Indians do not derive from race, but rather from the political status of the parents or children and the quasi-sovereign nature of the tribe (*see Fisher v District Court of Sixteenth Judicial Dist. of Mont.*, 424 US 382, 390 [1976]; *Morton v Mancari*, 417 US 535, 553-554 [1974]; *Matter of Baby Boy L.*, 2004 OK 93, ¶ 22, 103 P 3d at 1107; *In re A.B.*, 663 NW2d at 636). Accordingly, most courts have rejected claims that legislation specifically directed at Indians or Indian tribes violates equal protection (*United States*

*v Antelope*, 430 US 641 [1977]; *Fisher v District Court*, 424 US at 390-391; *Morton v Mancari*, 417 US at 551-555).[6]

Having concluded that no fundamental right or suspect classification is implicated by the application of ICWA in this case, petitioners' constitutional claims are properly evaluated under the rational basis test (*Vacco*, 521 US at 799; *Romer*, 517 US at 631). Applying that test, we agree with those courts that have held that ICWA is rationally related to the protection and preservation of Indian tribes and families and to the fulfillment of Congress's unique guardianship obligation toward Indians (*In re A.B.*, 663 NW2d at 636; *Matter of Baby Boy L.*, 2004 OK 93, ¶ 22, 103 P3d at 1107; *see also In re Alicia S.*, 65 Cal App 4th at 88, 76 Cal Rptr 2d at 127).[7]

Perhaps the most fundamental flaw in the reasoning of the courts that have accepted the EIF exception is the failure to give adequate consideration to the statutory "good cause" exception in 25 USC § 1915, which permits state courts to depart from the placement preferences upon a showing of good cause. The EIF exception was adopted by state courts in response to the perceived unfairness of placing an Indian child with no connections to Indian culture with a tribe or an extended family member, against the expressed wishes of their parents, since it would not serve ICWA's purpose of preventing the breakup of existing Indian families. However, that rationale is weakened when it is understood that the placement preferences are not mandatory or automatic. Although ICWA does not define "good cause," regulations promulgated by the Bureau of Indian Affairs provide that good cause must be based on one or more of the following considerations: (1) the request of the biological parents or the child when of sufficient age; (2) the extraordinary physical or emotional needs of the child as established by testimony of a qualified expert witness; and (3) the unavailability of suitable Indian families for placement (*see* 44 Fed Reg 67,584, 67,594, guideline F.3 [1979]).

The EIF exception loses much of its force when viewed in light of the "good cause" exception, since that provision already

---

**6.** Contrary to petitioners' argument, the analysis of *Morton v Mancari* (*supra*) is not limited to functions designed to further tribal self-government, but rather applies more broadly to any legislation benefitting Indian people (*United States v Antelope*, 430 US at 646).

**7.** We also reject petitioners' argument that ICWA violates the 10th Amendment, since that argument is likewise premised on the assertion that ICWA's application to Indian children lacking connections to a tribe does not serve its purpose, a conclusion we have already refuted.

provides state courts with the flexibility to deviate from the placement preferences in circumstances where the interests of the parent or child outweigh the tribe's interest in the strict application of those preferences (*In re Alicia S.*, 65 Cal App 4th at 89, 76 Cal Rptr 2d at 127-128). Here, had Family Court found ICWA applicable and held a placement preference/good cause hearing, it may well have reached the same result of permitting the adoption to proceed without having to rely on a judicially created exception to ICWA that is inconsistent with its language and purpose (*id.*).

Accordingly, we decline to adopt the EIF exception and hold that ICWA is applicable to this adoption proceeding, irrespective of whether the Indian child or his parents had significant connections to the Tribe. Since ICWA applies here, Family Court should have addressed the Tribe's motion to intervene under ICWA.

Tribe's Motion to Intervene Under ICWA

■ The Tribe contends that it has standing to intervene as a matter of right pursuant to 25 USC § 1911 (c), which provides: "In any State court proceeding for the *foster care placement of*, or *termination of parental rights to*, an Indian child, the Indian custodian and the Indian child's tribe shall have a right to intervene at any point in the proceeding" (emphasis added).

"Where the language of a statute is clear and unambiguous, courts must give effect to its plain meaning; words are not to be rejected as superfluous" (*Matter of Tall Trees Constr. Corp. v Zoning Bd. of Appeals of Town of Huntington*, 97 NY2d 86, 91 [2001]; *see also* McKinney's Cons Laws of NY, Book 1, Statutes § 94). Petitioners argue that 25 USC § 1911 (c) clearly and unambiguously limits tribal intervention to only two of the four types of child custody proceedings covered by ICWA—foster care placement and termination of parental rights proceedings. Thus, according to petitioners, a plain reading of the statute compels the conclusion that tribal intervention is not authorized by ICWA in adoption and pre-adoptive placement proceedings.

The Tribe counters that intervention is authorized because this adoption proceeding falls within ICWA's definition of a "termination of parental rights" proceeding. As noted, such proceedings are defined as "any action resulting in the termination of the parent-child relationship" (25 USC § 1903 [1] [ii]). The Tribe contends that because Rita's and Justin's parental rights will be terminated if this adoption petition is successful,

then it must be considered a termination of parental rights proceeding under ICWA.

Family Court agreed with the Tribe, finding that this was a proceeding to terminate parental rights "because the parental consents would be invalidated if the ICWA applied (*see,* 25 USC § 1913)" (5 Misc 3d at 380). We disagree with Family Court and find that this adoption proceeding is not a "termination of parental rights" proceeding, as that term is defined in ICWA.[8]

The record is clear that on April 26, 2004, both Rita and Justin signed extrajudicial consents to the termination of their parental rights and adoption of the child in the Arizona Superior Court, and a Judge of that court certified that such consents were "given freely and voluntarily" after a full explanation. On the same date, the Judge issued an order stating: "It is hereby ordered based upon the consents to adoption and unconditional relinquishment of parental rights of the natural parents, that the parental relationship . . . is hereby terminated." Thus, the parental rights of Rita and Justin had already been terminated in Arizona, and because of this prior termination, it follows that this New York adoption proceeding cannot be an "action resulting in the termination of the parent-child relationship" under ICWA (25 USC § 1903 [1] [ii]).

Applying the plain and ordinary meaning of 25 USC § 1911 (c), we find that although ICWA expressly permits the Tribe to intervene in foster care placement and termination proceedings, it does not authorize tribal intervention in pre-adoptive placement and adoptive placement proceedings. Most courts that have considered this issue have agreed with this interpretation (*see In re Morgan,* 1997 WL 716880, 1997 Tenn App LEXIS 818, *supra* [tribe had no right to intervene in adoption proceeding under ICWA]; *In re Baby Girl A.,* 230 Cal App 3d 1611, 1616-1617, 282 Cal Rptr 105, 108 [4th Dist 1991] [same]; *Matter of J.R.S.,* 690 P2d 10, 15 [Alaska 1984] [Act distinguishes between adoption and termination proceedings and intervention permitted only in latter]; *but see In re Desiree F.,* 83 Cal App 4th 460,

---

**8.** The Tribe asserts that petitioners should be precluded from arguing that this adoption proceeding does not constitute a "termination of parental rights" proceeding under ICWA because they did not raise this argument in Family Court, and did not cross-appeal Family Court's finding to the contrary. We disagree and find that the issue was preserved and is reviewable as a determination "adverse to the respondent" (CPLR 5501 [a] [1]; *Parochial Bus Sys. v Board of Educ. of City of N.Y.,* 60 NY2d 539, 545-546 [1983]) that is critical to the disposition of the appellant Tribe's appeal.

473, 99 Cal Rptr 2d 688, 698 [5th Dist 2000] [25 USC § 1911 (c) permits tribal intervention in any "child custody proceedings"]).

While the language of 25 USC § 1911 (c) compels the above conclusion, we must also note that such construction creates a statutory inconsistency in ICWA itself. The inconsistency arises from the fact that although 25 USC § 1911 (c) does not authorize tribal intervention in adoption proceedings, tribal participation is clearly contemplated by multiple provisions of 25 USC § 1915, pertaining to placement preferences. For instance, 25 USC § 1915 (a) requires that in any adoptive placement of an Indian child, a preference shall be given, absent good cause, to placement with the child's extended family, other members of the tribe or other Indian families. If a tribe has no right to intervene in the adoption proceeding under 25 USC § 1911 (c), it is difficult to discern how these tribal preferences may be presented and evaluated without the input of the tribe.

Similarly, 25 USC § 1915 (c) provides that "if the Indian child's tribe shall establish a different order of preference by resolution, the agency or court effecting the placement shall follow such order so long as the placement is the least restrictive setting appropriate to the particular needs of the child." However, since the tribe is not permitted to intervene in adoption proceedings under ICWA, the tribe's order of preference is unlikely to be presented to the court. Finally, 25 USC § 1915 (d) provides that the applicable standards in meeting the preference requirements of this section "shall be the prevailing social and cultural standards of the Indian community in which the parent or extended family resides." Without tribal intervention, those standards are unlikely to be considered.[9]

Our finding that ICWA does not provide for tribal intervention in adoption proceedings as a matter of right does not end the inquiry, however, as the Tribe alternatively sought intervention in this case under CPLR 1013. Many courts have held that although ICWA does not provide a statutory right of intervention, neither does it prohibit intervention under applicable state law. These courts have looked to state law to determine whether the tribe's interest is of sufficient weight to warrant intervention as a matter of discretion (*Matter of J.R.S.*, 690 P2d at 15-19

---

9. The statutory inconsistency is a vexing one, since part of the statute appears to preclude tribal intervention in adoption proceedings (25 USC § 1911 [c]), while another part clearly contemplates it (25 USC § 1915 [a]). In the end, we cannot ignore the clear statutory wording, especially where state law provides an alternative remedy (*see infra*).

[tribe had interest in adoption proceeding under state law and intervention was necessary to preserve this interest]; *In re Baby Girl A.*, 230 Cal App 3d at 1617-1619, 282 Cal Rptr at 108-109 [same]).

CPLR 1013 permits intervention by permission when a person's claim or defense and the main action have a common question of law or fact. In this case, Family Court permitted the tribe to intervene pursuant to CPLR 1013, but only for the purpose of proving an existing Indian family (EIF hearing) and, subsequently, for the purpose of determining the child's best interests (best interests hearing). As the Tribe argued, however, those were the wrong hearings because the court had erroneously concluded that ICWA and its placement preferences did not apply. Had the court correctly found ICWA applicable, the court would have been required to hold a hearing on the placement preferences and the good cause exception pursuant to 25 USC § 1915.

 We find that the Tribe should have been permitted to intervene under CPLR 1013 because it had a valid interest, recognized by Congress and the Supreme Court in *Holyfield*, that this child custody proceeding concerning an Indian child be conducted in accordance with ICWA. Although prejudice and undue delay are factors the court may consider in exercising its discretion under CPLR 1013, neither factor is present here. Although the Tribe was apparently informed of the Arizona proceeding and did not appear, it gave notice of its intent to intervene in the New York adoption proceeding within two months of the Arizona proceeding. We also note that most of the delay in this adoption proceeding resulted from petitioners' challenge to ICWA's applicability, not from any dilatory conduct by the Tribe (*cf. Holyfield*, 490 US at 53-54; *In re Desiree F.*, 83 Cal App 4th at 477, 99 Cal Rptr 2d at 701).

Petitioners' additional arguments do not persuade us. They argue that even if Family Court erred in applying the EIF exception to ICWA to deny intervention, such error was harmless because tribal intervention in this instance would not have resulted in preserving the child's relationship with the Tribe. They point to Rita's statement in the record that if ICWA was applied and the adoption failed for any reason, she would revoke her consent and the child would be returned to her to be raised in a non-Indian environment—a result contrary to the goals of ICWA. This same argument was raised in *Matter of Adoption of Baby Boy L.* (231 Kan at 208, 643 P2d at 177, *supra*), where, as

here, the mother's consent to adoption was expressly limited to placement with the prospective adoptive parents, and the mother indicated she would revoke the consent and retain custody if the adoption failed. Under these circumstances, the Kansas Supreme Court concluded that Congress could not have intended such a "ridiculous" result where the application of ICWA would inevitably result in the child's return to a non-Indian setting (231 Kan at 209, 643 P2d at 177).[10]

■ Contrary to *Matter of Adoption of Baby Boy L.*, we do not agree that the application of ICWA would be "useless" (*id.*) where a parent threatens to revoke his or her consent to the adoption in order to defeat its provisions. At the very least, the important interests of the tribe and the child are protected during the pendency of the child custody proceeding. In addition, the parent may ultimately change his or her mind once the court decides that ICWA will be applied to the proceedings. Moreover, if this harmless error argument held sway, ICWA could easily be avoided by a parent desirous of relinquishing a child for adoption outside the strictures of ICWA. We are reluctant to apply the harmless error doctrine in a manner that permits this carefully considered legislation by Congress to be so easily evaded.

Petitioners also contend that the denial of intervention was harmless because the record shows that had ICWA been applied, Family Court would have been justified in finding "good cause" to avoid the placement preferences of 25 USC § 1915 (a). In this regard, petitioners note that the Tribe would not be prejudiced if this Court makes a "good cause" ruling based on the existing record since the Tribe was given the opportunity to intervene under CPLR 1013, but instead rested on the record.

In our view, consideration of the good cause exception would be premature in the absence of a prior determination that ICWA applied to the instant proceeding. Since the exception permits a court to depart from the placement preferences upon a showing of "good cause to the contrary" (25 USC § 1915 [a]), it would seem appropriate to first identify which preferences are available, if any, before determining whether a departure is appropri-

---

**10.** It is not clear to us that Rita would be permitted to revoke her consent to the termination of her parental rights, resulting in the child being returned to her. ICWA permits her to revoke her consent to the termination of parental rights or the adoption "prior to the entry of a final decree of termination or adoption, as the case may be" (25 USC § 1913 [c]). Here, an order terminating her parental rights has already been entered in Arizona.

ate. Nor do we believe that an adequate record exists to make a good cause determination. The only record before this Court is the transcript of the hearing held by Family Court to determine whether the child was part of an existing Indian family. That evidence focused primarily on Rita's attenuated relationship with the Tribe and only briefly touched on Elizabeth's suitability as caretaker. There was little or no discussion about potential placement preferences other than Elizabeth and no consideration of the good cause standard. Given the importance of the placement preferences and the good cause exception under ICWA, it would be inappropriate for this Court to make a determination without a full record and briefing on the subject. We also note that the burden of proof was on the Tribe to prove the existence of an existing Indian family, whereas the burden of proof would be placed on petitioners to prove "good cause."

Accordingly, the order of the Family Court, New York County (Mary E. Bednar, J.), entered on or about January 19, 2005, which, after a determination adopting the existing Indian family exception to the Indian Child Welfare Act, denied the Tribe's motion to intervene and directed the adoption to proceed in the child's best interests, should be reversed, on the law, without costs, the motion to intervene granted pursuant to CPLR 1013, the direction vacated and the matter remanded for further proceedings in accordance with the opinion herein.

SAXE, J.P., NARDELLI, WILLIAMS and CATTERSON, JJ., concur.

Order, Family Court, New York County, entered on or about January 19, 2005, reversed, on the law, without costs, the motion to intervene granted pursuant to CPLR 1013, the direction vacated and the matter remanded for further proceedings in accordance with the opinion herein.