In re: in the Matter of R.M.S., a child.

No. 05SA308.

Supreme Court of Colorado,
En Banc.

Feb. 13, 2006.

Jeffrey D. Easley, P.C., Jeffrey D. Easley, Denver, for Petitioners Ginny Villers and William Brian Villers.

Liggett, Smith & Wilson, P.C., Amy L. Rosenberg, Fort Collins, for Respondent Kathleen Nace.

MARTINEZ, Justice.

Petitioners, Ginny Villers and William Brian Villers (collectively, "the Villers"), filed this original proceeding under C.A.R. 21 seeking to vacate the trial court's order awarding guardianship of R.M.S., a minor, to Respondent, Kathleen Nace, after the deaths

of R.M.S.'s parents, Sara Sherwood and Stephen Sherwood. The trial court enforced the terms of Stephen Sherwood's will, which appointed Nace guardian for R.M.S., based on its legal conclusion that a court can set aside a valid testamentary appointment only to avoid potential harm or injury to the minor. The Villers, as persons with the care and custody of R.M.S., objected to the testamentary appointment and seek a new order appointing a guardian for R.M.S. pursuant to the best interest of the child standard. We issued a rule to show cause and now make the rule absolute.

## I. Facts and Proceedings

On the afternoon of August 3, 2005, Larimer County law enforcement officials responded to a 911 call reporting sounds of gunfire in the home of Sara and Stephen Sherwood. Upon entry, officials discovered the Sherwoods' bodies. Nine days after returning from active combat duty in Iraq, Stephen Sherwood shot and killed his wife, Sara Sherwood, and then killed himself.

The Sherwoods' daughter, R.M.S., was at a neighbor's home during the shootings. Authorities subsequently placed R.M.S. in the care of Ginny Villers, Sara Sherwood's sister, and Ginny Villers' husband, William Brian Villers. R.M.S. has remained in the Villers' care and custody since the deaths of her parents.

On August 8, 2005, the Villers filed an emergency petition for the appointment of a guardian for R.M.S. The petition asserted that all parental rights had been terminated by death and the Villers were interested persons with the current care of R.M.S. The petition further asserted it was necessary to appoint a temporary and emergency guardian for R.M.S. until a hearing could be held on the petition because an immediate need existed and the appointment of a temporary guardian was in the best interest of R.M.S.

Seven days later, Kathleen Taylor Nace, Stephen Sherwood's mother, petitioned for appointment of guardianship on the basis that she was appointed by the will of the last parent to die, Stephen Sherwood, and the appointment had not been prevented or terminated pursuant to section 15–14–203, C.R.S. (2005). She concurrently filed an acceptance of testimonial appointment as required under section 15–14–202, C.R.S. (2005), and petitioned the trial court for confirmation of the appointment pursuant to section 15–14–202(6), C.R.S. (2005).

The Villers objected to Nace's petition for the appointment of guardian and advanced a best interest of the child standard to the guardianship determination.[1] Under this standard, the Villers argued it would be in R.M.S.'s best interest to remain in their care and custody.

After a hearing on both guardianship petitions, the trial court entered an oral ruling appointing Nace guardian of R.M.S. The trial court concluded the relevant statute, while providing a court some degree of discretion in determining the appointment of a guardian, did not provide it with the discretion to employ a "best interests of the child standard." The court instead applied a harm standard: it concluded Stephen Sherwood's will controlled the guardianship appointment[2] unless "the appointment causes *harm* or *injury*" to R.M.S. Because Nace was willing to accept the appointment and the court could not find any indication that such

1. The Villers' objection to Nace's guardianship petition also asserted that the so-called "slayer statute," section 15–11–803, C.R.S. (2005), prevented the court from effectuating Stephen Sherwood's will. The slayer statute addresses the effect of homicide on intestate succession, wills, trusts, joint assets, life insurance and beneficiary designations. The trial court concluded the provisions of the statute—specifically the revocation of benefits from the decedent's estate that would otherwise accrue to the killer and the revocation of the nomination of the killer to serve any fiduciary capacity—were inapplicable to the guardianship dispute. The issue is not raised here.

2. A signed copy of Stephen Sherwood's will and an unsigned copy of Sara Sherwood's will were admitted into evidence. Both wills designated Nace guardian for R.M.S. in the event that both Sara and Stephen Sherwood died. Because the trial court determined Stephen Sherwood's will was valid and that he was the second parent to die, the trial court held that Stephen Sherwood's will controlled the appointment and did not address the validity of Sara Sherwood's will.

an appointment would cause harm or injury to R.M.S., the court granted Nace's petition and denied the Villers' emergency petition. The trial court noted, however, that if it had applied a best interest standard, it might have appointed the Villers as R.M.S.'s guardian. The trial court stayed removal of R.M.S.

The Villers seek a rule to show cause requiring the trial court to vacate its ruling and enter a new ruling based upon the best interests of R.M.S.

## II. Analysis

Sections 15–14–201 to –210, C.R.S. (2005), of the Colorado Probate Code govern the appointment of guardians. A guardian may be appointed by a parent under section 15–14–202 (a "testamentary appointment") or by a court under section 15–14–204, C.R.S. (2005) (a "judicial appointment"). Although a parent may make a testamentary appointment, a person with the care or custody of the minor may object to the appointment under section 15–14–203(1), C.R.S. (2005).

 To determine the issue before us—whether an objection under section 15–14–203(1) to a parental appointment requires judicial appointment of a guardian determined on the best interest of the child standard—we review de novo the statutory provisions governing parental appointments, objections and judicial appointments. *See Welch v. George,* 19 P.3d 675, 677 (Colo. 2000). We first look to the statutory language and give words and phrases their plain and ordinary meaning. *Civil Rights Comm'n ex rel. Ramos v. Regents of Univ. of Colo.,* 759 P.2d 726, 735 (Colo.1988). Where the language of a statute is plain and the meaning clear, we apply it as written because we presume the General Assembly meant what it said. *See Allstate Ins. Co. v. Smith,* 902 P.2d 1386, 1387 (Colo. 1995).

We first discuss uncontested testamentary appointments made under section 15–14–202 and note that a court's role is limited to confirming the appointment. Next, we consider objections to parental appointments under section 15–14–203(1) and conclude an objection triggers the judicial appointment statute. We then discuss judicial appointments made under section 15–14–204, C.R.S. (2005), and observe that the legislature has clearly conditioned all judicial appointments on the minor's best interests. Finally, we conclude that a judicial appointment, made subsequent to an objection to a testamentary appointment, is to be made pursuant to the best interest of the child standard.

### A. Testamentary Appointment of a Guardian

Section 15–14–202 confers authority on a parent to appoint a guardian by will or other signed writing: "a guardian may be appointed by will or other signed writing by a parent for any minor child the parent has or may have in the future." § 15–14–202(1), C.R.S. (2005); *see also* § 15–14–201. In connection with the appointment, the parent may specify limits on a guardian's powers and revoke or amend the appointment before confirmation by the court. § 15–14–202(1).

A testamentary appointment is generally effective upon the death of the appointing parent:

Subject to section 15–14–203, the appointment of a guardian *becomes effective upon the death of the appointing parent or guardian,* an adjudication that the parent or guardian is an incapacitated person, or a written determination by a physician who has examined the parent or guardian that the parent or guardian is no longer able to care for the child, whichever occurs first. § 15–14–202(3), C.R.S. (2005) (emphasis added). Although a parent may appoint a guardian, whose appointment will be effective upon his or her death, the court must be petitioned to confirm the appointment. § 15–14–202(4), C.R.S. (2005). The court may confirm an appointment before or after it is effective. Section 15–14–202(2), C.R.S. (2005), provides that the court may confirm an appointment upon petition of an appointing parent or guardian, who will likely be unable to care for the child within two years: "Upon petition of an appointing parent or guardian ... the court, *before the appointment becomes effective,* may *confirm* the selection of a guardian by a parent or guardian

and terminate the rights of others to object." (Emphasis added.) Section 15–14–202(6) provides that the trial court may confirm an appointment upon petition of the nominee after the appointment becomes effective: "Unless the appointment was previously confirmed by the court … a [nominee] *shall petition the court for confirmation* of the appointment." (Emphasis added.)

In addition to petitioning the court for confirmation of a testamentary appointment, the appointee must file an acceptance of the appointment and "[g]ive written notice of the acceptance to … a person other than the parent or guardian having care and custody of the minor." § 15–14–202(4)(b), C.R.S. (2005). In this regard, the notice provisions contained in section 15–14–202 make clear that the legislature considered the person with the care or custody of the minor significant to the guardianship confirmation and appointment process. For example, whether a court confirms a testamentary appointment before or after the appointment is effective, a petitioner must give notice of a guardianship hearing to "[a]ny person alleged to have had the *primary care and custody of the minor* during the sixty days before the filing of the petition." § 15–14–205(1)(b), C.R.S. (2005) (emphasis added); *see* §§ 15–14–202(2), 15–14–202(6). Specifically, section 15–14–202(2) permits a court to confirm an appointment before it is effective after notice is provided in section 15–14–205(1): *"[A]fter notice as provided in section 15–14–205(1),* the court, before the appointment becomes effective, may confirm the selection of a guardian." (Emphasis added.) Likewise, section 15–14–202(6) requires that notice be given as provided in section 15–14–205(1) before a court confirms an effective testamentary appointment: "[W]ithin thirty days after filing the notice and the appointing instrument, a guardian *shall* petition the court for confirmation of the appointment, *giving notice in the manner provided in section 15–14–205(1)."* (Emphasis added.)

In addition, section 15–14–202(5) requires that the notice provided, if the appointment has not been previously confirmed by the court, must state the right of persons with the care or custody of the minor to terminate the appointment by objecting under section 15–14–203(1): "[T]he notice given … must include a statement of the right of those [persons with the care or custody of the minor] to *terminate the appointment* by filing a written objection in the court as provided in section 15–14–203(1)." (Emphasis added.) If a person with the care or custody of the minor objects, the authority of a guardian appointed under section 15–14–202 is terminated: "The authority of a guardian appointed under [section 15–14–202] *terminates* upon … the giving of written notice to the guardian *of the filing of an objection* pursuant to section 15–14–203(1) …," § 15–14–202(9), C.R.S. (2005) (emphasis added). Thus, until the court has confirmed an appointee under section 15–14–202, the effectiveness of a parental appointment is subject to section 15–14–203(1).

## B. Objection to a Testamentary Appointment

■ Section 15–14–203(1) addresses objections by others to a parental appointment. By statute, an objection may be filed only by the other parent or, as relevant here, "a person other than a parent or guardian having *care or custody of the minor,"* § 15–14–203(1) (emphasis added). Significantly, an objection under section 15–14–203(1) to a testamentary appointee terminates, and may prevent, the appointment: "Until the court has confirmed an appointee under section 15–14–202 … a person other than a parent or guardian having care or custody of the minor may *prevent* or *terminate* the appointment at any time by filing a written objection." (Emphasis added.) Once a person with the care or custody of the minor terminates the testamentary appointment by objection, the parental appointment is ineffective and the appointee has no authority. *See* § 15–14–202(9); § 15–14–203(1). Since the testamentary appointee has no authority, no guardian exists for the minor and a guardian must be appointed by a mechanism other than the testamentary appointment. *See id.*

We conclude it is plain in subsection 15–14–203(1) that an objection triggers a judicial appointment under section 15–14–204. Section 15–14–203(1) specifies a trial court's involvement in the appointment process upon

objection by providing that an objection does not prevent a court from appointing the testamentary appointee: "The objection does not preclude *judicial appointment* of the person selected by the parent or guardian." (Emphasis added.) Likewise, section 15–14–203(1) also anticipates court involvement in the appointment process subsequent to objection by permitting the court to treat an objection as a petition for a temporary guardian under the judicial appointment statute: "the *court* may treat the filing of an objection ... as a petition for the *appointment* of an emergency or temporary guardian under section 15–14–204." (Emphasis added.) In noting that a court may still appoint the testamentary guardian or treat an objection as a petition for the appointment of a temporary guardian, the legislature plainly identified the judicial appointment procedures under section 15–14–204 as the mechanism to resolve a guardianship dispute between a testamentary appointee and a person with the care or custody of the minor involved.

Thus, an objection under section 15–14–203(1) has two interrelated effects on a parental appointment: (1) it terminates and may prevent the appointment; and (2) requires judicial appointment of a guardian. The parties agree that an objection to a parental appointment triggers a court's involvement in the guardianship process beyond confirmation, but disagree as to the scope of the involvement. The Villers argue a guardian must be judicially appointed pursuant to a best interest of the child standard. Nace asserts a valid testamentary nomination pursuant to section 15–14–202 removes all discretion from the trial court and requires the trial court to enforce the terms of the will unless such an appointment would cause harm or injury to the child. We agree with the Villers and conclude that an objection triggers the judicial appointment statute's best interest standard, to which we now turn.

## C. Conditions for the Judicial Appointment of a Guardian

Section 15–14–204 conditions the judicial appointment of a guardian on a finding that the appointment will be in the minor's best interest. Under section 15–14–204(2), the best interest of the child is the overriding requirement governing judicial appointments:

> (2) The court may appoint a guardian for a minor if the courts finds the appointment is in the *minor's best interest*, and:
>
> (a) The parents consent;
>
> (b) All parental rights have been terminated;
>
> (c) The parents are unwilling or unable to exercise their parental rights; or
>
> (d) Guardianship of a child has previously been granted to a third party ...

(Emphasis added.) The best interest of the child standard also governs temporary guardianship appointments made under the judicial appointment statute. Section 15–14–204(4) provides that "the court may appoint a temporary guardian for a minor upon a showing that an immediate need exists and that the appointment would be in the *best interest of the minor* " (emphasis added).

Consistent with the conditions for appointment set forth in section 15–14–204, the procedures for the judicial appointment of a guardian also impose a best interest of the child standard. Section 15–14–205(2) provides: "The court, upon hearing, shall make the appointment if it finds that ... the *best interest of the minor* will be served by the appointment" (emphasis added).

The legislature thus made clear that the paramount consideration in appointing a guardian is the best interest of the minor. In fact, no mention of a standard other than the best interest of the child is made in section 15–14–204. We see no reason to deviate from the best interest standard when the judicial appointment is made subsequent to an objection to a testamentary appointment.

■ We therefore decline to employ the harm standard advanced by Nace and adopted by the trial court. Indeed, applying a harm standard would require us to read language into the statute. The judicial appointment statute makes no mention of a harm standard and does not direct that a

trial court, in making its appointment, should apply any standard other than the best interests of the child, the standard that applies to all judicial appointments. Nor does the judicial appointment statute identify any exceptions for a judicial appointment made subsequent to an objection by a person with the care or custody of the minor. Had the legislature intended a court to appoint a guardian pursuant to a harm standard, it could have so stated. *See In re E.L.M.C.*, 100 P.3d 546, 555 (Colo.App.2004). Instead, the statute repeatedly provides a consistent standard by which to make a judicial appointment: the best interest of the child. Hence, when the trial court has jurisdiction over appointment of a guardian, its responsibility is to provide for the best interest and welfare of the minor.

Although we recognize the strong public policy in favor of encouraging parents to make testamentary selections in the first instance, we conclude the legislature did not intend to preclude the court from considering the best interests of the child who has been in the care or custody of persons other than the testamentary guardian. Hence, the testamentary nomination is not binding where the trial court determines in its sound discretion that a party with the care or custody of the minor is better suited to act as guardian.

Parental intent as to who should care for their minor children may nonetheless be a relevant factor to be considered in appointing a guardian under the best interest standard. A court may consider *all* relevant facts and circumstances to determine the best interest of the child. *See Rayer v. Rayer*, 32 Colo. App. 400, 403, 512 P.2d 637, 639 (1973); *Bd. of Educ. of Sch. Dist. No. 1 v. Booth*, 984 P.2d 639, 651 (Colo.1999) (citing § 14–10–124, 5 C.R.S. (1998)). Hence, the best interest of the child standard does not preclude a court from considering the desires of the pertinent parties, including the wishes of the minor's parent as expressed through a testamentary appointment. Thus, a court may weigh such wishes, keeping in mind the fluid and changing nature of interpersonal relationships and the frequency with which the will was reviewed after its election.

However, the paramount consideration is the best interest of the child and a testamentary appointment must yield to this overriding concern when the court resolves a guardianship dispute subsequent to an objection by a person with the care or custody of the minor under section 15–14–203(1). Accordingly, to appoint a guardian for a minor when a person with the care or custody of the child objects to the testamentary appointment, the court shall appoint a guardian under section 15–14–204 pursuant to the best interest of the child standard.

### III. Application

Here, Stephen Sherwood effected a valid will appointing Nace as R.M.S.'s testamentary guardian. Although Nace accepted the testamentary appointment, the timely objection of the Villers, as persons with the care and custody of R.M.S. terminated Nace's appointment. Consequently, the court must make a judicial appointment of a guardian for R.M.S. pursuant to the best interest of the child standard.

### IV. Conclusion

The rule to show cause is made absolute. The case is remanded with the directions to the district court to appoint a guardian under section 15–14–204 pursuant to the best interest of the child standard.

