199 P.3d 16 (2007)
In the Matter of the Petition of N.B., Petitioner-Appellant and Cross-Appellee, and
L.W-E., Respondent-Appellee and Cross-Appellant, and
Concerning B.S.B., a Child, and
Assiniboine Tribe and Sioux Tribe, Intervenors.
No. 06CA1325.
Colorado Court of Appeals, Div. VI.
September 6, 2007.
Rehearing Denied October 11, 2007.
*17 Kevin V. Moore, Denver, Colorado, for Petitioner-Appellant and Cross-Appellee.
American Indian Law Clinic, Jill E. Tompkins, Boulder, Colorado, for Respondent-Appellee and Cross-Appellant.
Faegre & Benson, L.L.P.  Boulder, Laurence W. Demuth, III, Padraic I. McCoy, Boulder, Colorado, for Intervenors.
Holland & Hart, L.L.P., Anthony J. Navarro, Jennifer K. Harvey Weddle, Denver, Colorado, for Amicus Curiae Colorado Indian Bar Association.
Monte Mills, Ignacio, Colorado, for Amicus Curiae Southern Ute Indian Tribe.
Peter Ortego, Towaoc, Colorado, for Amicus Curiae Ute Mountain Ute Tribe.
Opinion by Judge WEBB.
In this stepparent adoption proceeding, N.B. (stepmother) appeals the order dismissing her petition to adopt B.S.B. (the child), who is an Indian child. We agree with the trial court that her petition fails because she did not prove that active efforts were made to prevent the breakup of the Indian family, a requirement to terminate parental rights under the Indian Child Welfare Act of 1978, 25 U.S.C. §§ 1901 to 1963 (2001)(ICWA). Therefore, we affirm. Based on our affirmance, we need not address the merits of the cross-appeal of L.W-E. (mother).

I. Factual and Procedural Background
In 1998, the child was born to mother and Z.B. (father). The child has been in father's primary care since birth. Mother and father have not lived together since 1999.
*18 In May 2001, mother moved out of state. She saw the child only three times over the next three years and offered father no child support. The child believed that stepmother was his biological mother and saw mother as a stranger. Neither stepmother nor father corrected this belief.
Stepmother petitioned to terminate mother's parental rights and to adopt the child on the grounds that mother had abandoned him and not paid child support for more than one year.
The Assiniboine and Sioux Tribes of the Fort Peck Reservation (the tribe) intervened below because of mother's enrollment in the tribe. Mother enrolled the child in the tribe eight months after the petition was filed. His status as an "Indian child" for the purposes of the ICWA is undisputed. See 25 U.S.C. § 1903(4) (2001). A prior judge held that the ICWA applied to this stepparent adoption proceeding.
After hearing testimony from mother, stepmother, father, and experts for both sides, the trial court found beyond a reasonable doubt that mother had not provided reasonable support for and had abandoned the child for at least one year before the petition was filed. See § 19-5-203(1)(d)(II), C.R.S.2006.
The court rejected the existing Indian family exception to application of the ICWA and held that the ICWA was constitutional, using a rational basis test.
Applying the ICWA, the court found beyond a reasonable doubt that continued custody of the child by mother would likely result in serious emotional damage to him, but that stepmother had not shown that active efforts were made to provide remedial services or rehabilitative programs to prevent the breakup of the Indian family. Because stepmother failed to establish such active efforts, the court denied her petition.

II. Introduction
Stepmother contends the ICWA does not apply to stepparent adoption proceedings; the existing Indian family exception should bar the ICWA's application in cases where the child has never lived in an Indian home and participated in Indian culture; the ICWA is unconstitutional; and requiring her, as a private petitioner, to make active efforts to prevent the breakup of the Indian family under 25 U.S.C. § 1912(d) (2001) is unreasonable.
These are issues of federal law that have not been decided by either the United States Supreme Court or any Colorado appellate court. However, they have been resolved in several other states. We reject each of stepmother's arguments based on the majority view among those courts.
The trial court's interpretation of the ICWA is a question of law that we review de novo. See Elrick v. Merrill, 10 P.3d 689, 699 (Colo.App.2000). When interpreting a statute, our objective is to effectuate congressional intent and purpose. We read the statute as a whole, giving sensible effect to all its parts whenever possible. If the statutory language is clear, we apply the plain and ordinary meaning, unless the result would be absurd or unreasonable. Tate v. Colo. Dep't of Revenue, 155 P.3d 643, 647 (Colo.App. 2007).
In the exercise of its exclusive constitutional authority over Indian affairs, Congress enacted the ICWA, which established minimum standards for the removal of Indian children from their families. B.H. v. People in Interest of X.H., 138 P.3d 299, 301-02 (Colo.2006). The statute provides "there is no resource that is more vital to the continued existence and integrity of Indian tribes than their children." 25 U.S.C. § 1901(3) (2001). Its purpose is to promote stability and security of Indian tribes. 25 U.S.C. § 1902 (2001). It protects the tribal interest in Indian children by recognizing that the tribe has an interest in such children which is distinct from, but in parity with, the interests of the parents. Mississippi Band of Choctaw Indians v. Holyfield, 490 U.S. 30, 53, 109 S.Ct. 1597, 104 L.Ed.2d 29 (1989)(Holyfield); B.H. v. People in Interest of X.H., 138 P.3d at 303.

III. Application of the ICWA in Stepparent Adoptions
Stepmother first contends the ICWA does not apply in stepparent adoptions or where a *19 child will remain with one biological parent after the adoption. We consider and reject both contentions.

A. Stepparent Adoptions
Courts in several states have concluded that the ICWA applies in stepparent adoption cases. See In re Crystal K., 226 Cal.App.3d 655, 662-66, 276 Cal.Rptr. 619, 622-26 (1990); In re Adoption of R.L.A., 147 P.3d 306, 308-09 (Okla.Civ.App.2006); State in Interest of D.A.C., 933 P.2d 993, 997-1001 (Utah Ct.App.1997). Other states have applied the ICWA to non-dependency, non-stepparent, adoption petitions. D.J. v. P.C., 36 P.3d 663, 673 (Alaska 2001)(the ICWA applies to termination proceeding where the state is not the petitioning party); A.B.M. v. M.H., 651 P.2d 1170, 1172-74 (Alaska 1982)(kinship adoption); In re Baby Boy C., 27 A.D.3d 34, 41-43, 805 N.Y.S.2d 313, 318-27 (2005)(parent voluntarily placing child with adoptive family); In re Baby Boy L., 103 P.3d 1099, 1103-07 (Okla.2004) (same).
We are persuaded by these decisions and conclude that the ICWA applies to stepparent adoptions.
In so holding, we recognize that Congress enacted the ICWA to address rising concern over the consequences to Indian children and tribes of abusive state and county child welfare practices which separated many Indian children from their families and tribes through adoption by strangers. See Holyfield, 490 U.S. at 32, 109 S.Ct. 1597. Nevertheless, the ICWA's plain language is not limited to action by a social services department. Under the ICWA, a "child custody proceeding" encompasses "any action resulting in the termination of the parent-child relationship" and "any action resulting in a final decree of adoption." 25 U.S.C. § 1903(1)(ii), (iv) (2001).
Here, had stepmother succeeded, mother's parental rights would have been terminated when the adoption decree issued. Thus, this proceeding is a "child custody proceeding" within the meaning of the ICWA. See In re Crystal K., 226 Cal.App.3d at 661-66, 276 Cal.Rptr. at 622-25; In re Adoption of R.L.A., 147 P.3d at 309.
Further, Congress excepted only dissolution and delinquency proceedings from this broad definition of a "child custody proceeding" under the ICWA. 25 U.S.C. § 1903(1) (2001); In re Crystal K., 226 Cal.App.3d at 662, 276 Cal.Rptr. at 622. Hence, we discern no congressional intent to exempt stepparent adoptions from the ICWA. See In re Marriage of Chalat, 112 P.3d 47, 57 (Colo. 2005)("when the legislature speaks with exactitude, we must construe the statute to mean that the inclusion or specification of a particular set of conditions necessarily excludes others" (quoting Lunsford v. W. States Life Ins., 908 P.2d 79, 84 (Colo.1995))); Riley v. People, 104 P.3d 218, 221 (Colo.2004) (the presence of one exception is generally construed as excluding other exceptions).
We also recognize that the legislative history does not show that Congress discussed stepparent adoption when addressing the ICWA. But Congress is presumed to be aware of existing law. See Colo. Water Conservation Bd. v. City of Central, 125 P.3d 424, 434 (Colo.2005).
Colorado has had a stepparent adoption statute since 1967. Colo. Sess. Laws 1967, ch. 443, §§ 22-4-6, 22-4-7 at 1018, § 1. Other state statutes allowing stepparent adoption also predated the ICWA. See, e.g., Cal. Civ.Code §§ 224, 226.9 (1963); Idaho Code Ann. §§ 16-1504, 16-2005. (1963 & Supp. 1970); N.M. Stat. Ann. §§ 22223, 22226 (Supp.1975); Okla. Stat. Ann. tit. 10 § 60.57 (1966); Tex. Fam.Code Ann. §§ 15.02, 16.03 (1975 & Supp.1976). Cases addressing stepparent adoption date back to 1916. See Buck v. Meyer, 195 Mo.App. 287, 190 S.W. 997, 997-99 (1916); Heath v. Cuppel, 163 Wis. 62, 157 N.W. 527, 529 (1916).
Thus, because Congress was presumably aware of stepparent adoptions when it enacted the ICWA, we conclude that had it intended to exclude such proceedings, it would have done so.
Stepmother further argues that the ICWA does not apply here because a stepparent adoption is a voluntary proceeding when the state is not the petitioning party. However, the distinction between voluntary and involuntary proceedings depends on whether the parent whose parental rights are at issue *20 concedes the termination, not on whether the state initiates the proceeding. Compare 25 U.S.C. § 1912 (2001) (involuntary termination of parental rights) with 25 U.S.C. § 1913 (2001) (voluntary termination of parental rights). Because mother does not so concede here, terminating her parental rights through adoption would be involuntary.
Stepmother's reliance on the statement in People in Interest of S.R.M., 153 P.3d 438, 442 (Colo.App.2006), that "[i]f the state sought neither foster care nor termination of parental rights, the ICWA would not apply" is misplaced. The division did not hold that the ICWA applies only if the state is the petitioning party. Rather, because the voluntary/involuntary distinction urged by stepmother was not at issue, the statement reflects only dictum. See Z.J. Gifts D-2, L.L.C. v. City of Aurora, 93 P.3d 633, 640 (Colo.App.2004)(discussion not necessary to decision is dictum).
Accordingly, we conclude that Congress intended to include stepparent adoption proceedings in the ICWA.

B. Adoptions Where the Child Remains with One Biological Parent
Stepmother also argues that the ICWA is inapplicable because the child will remain in father's custody. However, the ICWA does not except custody disputes within an extended family or draw distinctions based on who will be the post-adoption parents of the Indian child. A.B.M. v. M.H., 651 P.2d at 1173. A state court should not create such an exception. See People in Interest of C.M., 630 P.2d 593, 596 (Colo.1981)(reading requirements into a statute would implicate this court in wholesale statutory revision, a matter within the legislature's sole province).
Here, although the child will not be removed from father, had stepmother's petition succeeded he would have been legally severed from mother. Because the ICWA protects mother's parental rights to the child, see D.J. v. P.C., 36 P.3d at 670, whether he remains with father is irrelevant to its application.
We are also unpersuaded by stepmother's citation to 25 U.S.C. § 1915(b) (2001), the ICWA's placement preference provision, as evidence that a child must be removed from both biological parents for the statute to apply. That section mandates a preference for a preadoptive placement, absent good cause to the contrary, to
(i) a member of the Indian child's extended family;
(ii) a foster home licensed, approved, or specified by the Indian child's tribe;
(iii) an Indian foster home licensed or approved by an authorized non-Indian licensing authority; or
(iv) an institution for children approved by an Indian tribe or operated by an Indian organization which has a program suitable to meet the Indian child's needs.
If stepmother's petition were successful, she would adopt the child, and she is an extended family member as defined by the ICWA. See 25 U.S.C. § 1903(2) (2001) (an "extended family member" is "defined by the law or custom of the Indian child's tribe or, in the absence of such law or custom, shall be a person who has reached the age of eighteen and who is the Indian child's grandparent, aunt or uncle, brother or sister, brother-in-law or sister-in-law, niece or nephew, first or second cousin, or stepparent").
Accordingly, we further conclude that even if an Indian child will remain with one biological parent, the ICWA still applies to the stepparent adoption.

IV. Existing Indian Family Exception
Stepmother next contends we should adopt the existing Indian family exception and on that basis conclude the ICWA does not apply because here the child had no connection with the tribe. See In Interest of C.C.G., 942 P.2d 1380, 1382 (Colo.App.1997)(noting the exception, but declining to accept or reject it). We reject the existing Indian family exception because the reasoning of the courts that have so held represents the better view.
The Kansas Supreme Court created the existing Indian family exception by holding the ICWA should apply only to the removal *21 of Indian children who were members of an Indian home and participated in Indian culture. In re Adoption of Baby Boy L., 231 Kan. 199, 205-09, 643 P.2d 168, 175-77 (1982). Courts in Kentucky, Louisiana, and Missouri have adopted and continue to apply the exception. See Rye v. Weasel, 934 S.W.2d 257, 262 (Ky.1996); Hampton v. J.A.L., 658 So.2d 331, 334-35 (La.Ct.App. 1995); In Interest of S.A.M., 703 S.W.2d 603, 608 (Mo.Ct.App.1986).
Although courts in Oklahoma and Washington originally adopted the exception, both states have since statutorily rejected it. Okla. Stat. tit. 10, § 40.3 (2001); Wash. Rev. Code §§ 26.10.034(1), 26.33.040(1).
The courts of Alaska, Arizona, Idaho, Illinois, Michigan, Montana, New Jersey, New York, North Dakota, Oregon, South Dakota, and Utah have also rejected the existing Indian family exception. See In re Adoption of T.N.F., 781 P.2d 973, 977-78 (Alaska 1989); Michael J., Jr. v. Michael J., Sr., 198 Ariz. 154, 157-58, 7 P.3d 960, 963-64 (Ariz.Ct. App.2000); In re Baby Boy Doe, 123 Idaho 464, 470-71, 849 P.2d 925, 931-32 (1993); In re Adoption of S.S., 252 Ill.App.3d 33, 42-43, 190 Ill.Dec. 802, 622 N.E.2d 832, 838-39, (1993), rev'd on other grounds, 167 Ill.2d 250, 212 Ill.Dec. 590, 657 N.E.2d 935 (1995); In re Elliott, 218 Mich.App. 196, 203-06, 554 N.W.2d 32, 35-37 (1996); In re Adoption of Riffle, 277 Mont. 388, 393, 922 P.2d 510, 513-14 (1996); In re Adoption of Child of Indian Heritage, 111 N.J. 155, 169-71, 543 A.2d 925, 932-33 (1988); In re Baby Boy C., 27 A.D.3d at 46-53, 805 N.Y.S.2d at 319-27; In re A.B., 663 N.W.2d 625, 636 (N.D.2003); Quinn v. Walters, 117 Or.App. 579, 583-84, 845 P.2d 206, 208-09 (1993), rev'd on other grounds, 320 Or. 233, 881 P.2d 795 (1994); In re Adoption of Baade, 462 N.W.2d 485, 489-90 (S.D.1990); State in Interest of D.A.C., 933 P.2d at 999-1000. Similarly, the Iowa state legislature has rejected the exception. Iowa Code § 232B.5(2).
California courts are split on this issue. The first, third, and fifth appellate districts have rejected it. In re Adoption of Hannah S., 142 Cal.App.4th 988, 996, 48 Cal.Rptr.3d 605, 610-11 (2006); In re Alicia S., 65 Cal. App.4th 79, 84-91, 76 Cal.Rptr.2d 121, 123-28 (1998); In re Adoption of Lindsay C., 229 Cal.App.3d 404, 409-15, 280 Cal.Rptr. 194, 197-201 (1991). The second district, second division; the fourth district, third division; and the sixth appellate district have adopted it. In re Santos Y., 92 Cal.App.4th 1274, 1303-17, 112 Cal.Rptr.2d 692, 715-27 (2001); Crystal R. v. Superior Court, 59 Cal.App.4th 703, 713-24, 69 Cal.Rptr.2d 414, 420-27 (1997); In re Alexandria Y., 45 Cal.App.4th 1483, 1490-94, 53 Cal.Rptr.2d 679, 684-87 (1996).
While not directly addressing the applicability of the existing Indian family exception, in Holyfield, 490 U.S. at 49-53, 109 S.Ct. 1597, the Supreme Court stated that individual reservation-domiciled tribal members having custody over children domiciled on the reservation cannot defeat the tribe's exclusive jurisdiction over those children by removing them from the reservation. The Court explained that such action would defeat congressional recognition of the tribes' interests in Indian children as well as the interests of the Indian children themselves. Several courts have read this language as undermining the exception. In re Alicia S., 65 Cal.App.4th at 84-85, 76 Cal.Rptr.2d at 124-25; In re Adoption of Lindsay C., 229 Cal.App.3d at 411-15, 280 Cal.Rptr. at 198-201; In re Baby Boy C., 27 A.D.3d at 43-44, 805 N.Y.S.2d at 319-20; In re A.B., 663 N.W.2d at 636; State in Interest of D.A.C., 933 P.2d at 999.
We agree with this view. Just as a parent or Indian custodian cannot defeat application of the ICWA by removing a child from a reservation, a parent or Indian custodian should not be able to do so by unilaterally determining that the Indian child will not be raised in an Indian home and will not participate in Indian culture. Both actions similarly defeat the tribal interest recognized by the statute.
Several of these courts have also explained that (1) Congress stated the ICWA applies when the child is an Indian child and the matter is a child custody proceeding; (2) Congress limited the application of the ICWA in only delinquency and dissolution proceedings; and (3) Congress stated that the ICWA's purposes require its application *22 to preserve the tribe's interest in its children, all of which are frustrated by limiting the ICWA to the removal of a child from a home where the child participates in Indian culture. In re Baby Boy C., 27 A.D.3d at 46-49, 805 N.Y.S.2d at 322-24; State in Interest of D.A.C., 933 P.2d at 999-1000.
Moreover, the statutory scheme does not require the child to be part of an existing Indian family. The word "existing" does not appear in the ICWA. In re Baby Boy C., 27 A.D.3d at 48, 805 N.Y.S.2d at 323. Nor does the ICWA include any criteria for identifying what constitutes an Indian Family. See 25 U.S.C. § 1903 (2001) (definitions under the ICWA).
Hence, applying the exception would empower state courts to make an inherently subjective factual determination as to the "Indianness" of a particular child or the parents, which courts are "ill-equipped to make." In re Alicia S., 65 Cal.App.4th at 90, 76 Cal.Rptr.2d at 128; In re Baby Boy C., 27 A.D.3d at 49, 805 N.Y.S.2d at 324.
Such a determination could also conflict with congressional policy underlying the ICWA that placement of Indian children who are subject to child custody proceedings must be made in accordance with Indian cultural or community standards. See 25 U.S.C. § 1915(d) (2001) (the standards to be applied in meeting the placement preference requirements shall be the "prevailing social and cultural standards of the Indian community in which the parent or extended family resides or with which the parent or extended family members maintain social and cultural ties").
Applying the exception would result in each state court using its own value system to decide whether a child is "Indian enough" for the ICWA to apply, which would limit the tribes' efforts to regain members who were lost because of earlier governmental action. Quinn v. Walters, 117 Or.App. at 584 n. 2, 845 P.2d at 209. And applying such value systems would likely produce inconsistent outcomes. Cf. Holyfield, 490 U.S. at 45-46, 109 S.Ct. 1597.
As the court explained in In re Alicia S.:
It is "most improbable" that Congress meant to leave it to the states to determine whether to apply a statute intended to limit their power in Indian child custody proceedings. "Engrafting a new requirement into ICWA that allows the dominant society to judge whether the parent's cultural background meets its view of what `Indian culture' should be puts the state courts right back into the position from which Congress has removed them."
In re Alicia S., 65 Cal.App.4th at 90, 76 Cal.Rptr.2d at 128 (quoting Quinn v. Walters, 117 Or.App. at 584 n. 2, 845 P.2d at 209).
Accordingly, we decline to adopt the existing Indian family exception.

V. Constitutionality of the ICWA
Citing In re Bridget R., 41 Cal.App.4th 1483, 1502-12, 49 Cal.Rptr.2d 507, 522-30 (1996), stepmother argues that resolving stepparent adoptions based on the ICWA would be unconstitutional because (1) the ICWA is a racially-based statute, which does not survive heightened scrutiny; (2) the ICWA violates a child's substantive due process right to a stable home because that right is furthered by stepparent adoption; (3) the ICWA violates equal protection by placing demands on a stepparent which do not exist under state law; and (4) the ICWA violates the Tenth Amendment to the United States Constitution because it infringes on powers over domestic relations reserved to the states. We join those courts that have rejected these arguments.
Preliminarily, we note that stepmother argues in terms of an "as-applied" challenge on appeal, as she did below. However, she is raising a facial challenge because she asserts that the statute is unconstitutional in all stepparent adoptions, not merely in her particular circumstances. See Sanger v. Dennis, 148 P.3d 404, 410-11 (Colo.App.2006) (an "as applied challenge" contends the statute would be unconstitutional under the circumstances in which the plaintiff has acted or proposes to act; a "facial" challenge is used when a plaintiff seeks to render a statute utterly inoperative). Because stepmother does not dispute that the ICWA is constitutional *23 under a rational basis test, we decline to address that issue.
Several courts have declined to adopt the Bridget R. analysis because (1) the United States Supreme Court has consistently rejected claims that laws which treat Indians as a distinct class violate equal protection; (2) the different treatment of Indians and non-Indians under the ICWA is based on the parents' and children's political status as tribal members and the sovereign nature of the tribe, not on race; (3) the substantive due process and equal protection challenges are subject to a rational basis analysis, and the ICWA is rationally related to both protection of the integrity of Indian families and tribes and fulfillment of Congress's unique guardianship obligations toward Indians; and (4) Congress's plenary power to legislate Indian matters is well established, and the ICWA is an appropriate exercise of that power, which does not violate the Tenth Amendment. See In re Vincent M., 150 Cal.App.4th 1247, 1265-68, 59 Cal.Rptr.3d 321, 334-37 (2007); In re Adoption of Hannah S., 142 Cal.App.4th at 996, 48 Cal.Rptr.3d at 610-11; In re Baby Boy C., 27 A.D.3d at 49-52, 805 N.Y.S.2d at 324-27; In re Baby Boy L., 103 P.3d at 1107; In Interest of A.B., 663 N.W.2d at 636-37.
We also note that, other than In re Bridget R. and decisions from some intermediate California appellate courts following it, no authority recognizes a child's constitutional right to a stable home. Bridget R. relies solely on California Supreme Court decisions that do not address the ICWA. In re Baby Boy C., 27 A.D.3d at 50-51, 805 N.Y.S.2d at 325-26. Those decisions, which discuss a child's "fundamental independent interest in belonging to a family unit," do so in the context of the state's compelling interest in ensuring that dependent children have a safe home. See In re Jasmon O., 8 Cal.4th 398, 419-21, 33 Cal.Rptr.2d 85, 878 P.2d 1297, 1307-09 (1994); In re Marilyn H., 5 Cal.4th 295, 306-07, 19 Cal.Rptr.2d 544, 851 P.2d 826, 832-33 (1993).
Neither the United States Supreme Court nor the Colorado Supreme Court has recognized a child's substantive due process right to a stable home. Cf. Dawson v. Pub. Employees' Retirement Ass'n, 664 P.2d 702, 708 (Colo.1983)("In no sense, therefore, can it be argued that the child's choice as to a custodial parent amounts to a fundamental constitutional right."); In re Adoption of T.K.J., 931 P.2d 488, 494 (Colo.App.1996)(declining to recognize a fundamental liberty interest "regarding the relationship between a child and a potential adoptive parent").
Accordingly, we conclude that the ICWA is constitutional and does not violate the Tenth Amendment.

VI. Active Efforts to Prevent the Breakup of the Indian Family
Finally, stepmother contends that even if the ICWA governs stepparent adoptions of Indian children and no constitutional infirmity results, requiring her to establish active efforts to provide remedial services and rehabilitative programs to prevent the breakup of the family is unreasonable because she is a private petitioner. Again, we disagree.

A. The Active Efforts Requirement
25 U.S.C. § 1912(d) provides in pertinent part:
Any party seeking to effect ... termination of parental rights to, an Indian child under State law shall satisfy the court that active efforts have been made to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family and that these efforts have proved unsuccessful.
Here, the trial court held that this section required stepmother to provide those services, but found that she had made no such efforts. Stepmother does not challenge the latter finding. Rather, she argues that because she could not offer remedial services to mother which would be adequate under the ICWA, it should not be interpreted as making her responsible for creating, administering, funding, and staffing a quasi-social services department. We are not persuaded.
The ICWA's plain language requires the petitioning party to show that "active efforts" were made to prevent the breakup of the Indian family. 25 U.S.C. § 1912(d). As previously discussed, Congress made no exception *24 for stepparent adoptions or other types of non-dependency adoption proceedings, although the petitioning party in these proceedings will not have the resources of a social services department. Stepmother has cited no authority excusing such efforts in a case where the petitioner is a private party. See Freytag v. Comm'r of Internal Revenue, 501 U.S. 868, 874, 111 S.Ct. 2631, 115 L.Ed.2d 764 (1991) (courts are not at liberty to create an exception where Congress has declined to do so).
We acknowledge that Colorado law recognizes the "paramount importance" of the best interests of the child. See, e.g., In re Adoption of C.A., 137 P.3d 318, 324 (Colo.2006); In re R.M.S., 128 P.3d 783, 787 (Colo.2006). Indeed, "[t]he conflict between the best interests of the child and the natural parent's right to parenthood, which can arise in a stepparent adoption such as this case, is resolved in Colorado law by placing primary importance on the best interests of the child." E.R.S. v. O.D.A., 779 P.2d 844, 850 (Colo.1989).
But here we are applying the ICWA. See Quinn v. Walters, 320 Or. at 258, 881 P.2d at 809-10 ("The legal basis for the ICWA is rooted in the constitutional and plenary power of Congress over Indians, their tribes, and Indian affairs. When a state court has before it a controversy governed by federal substantive law, the court is required to apply the federal law, under compulsion of the Supremacy Clause....").
The ICWA provides more limited recognition of the child's best interests. That standard appears only in section 1902, which declares a national policy "to protect the best interests of Indian children" by establishing minimum standards for removal. Thus, in our view the active efforts requirement is not excused even if requiring such efforts may not further the best interests of an Indian child in a particular case.
Therefore, we conclude that the burden of proving fulfillment of the active efforts requirement applies to private petitioners such as stepmother. We express no opinion whether a private petitioner must make those efforts directly.

B. Futility of Active Efforts
Before the trial court, stepmother did not assert that she should be excused from the active efforts requirement if such efforts would be futile. However, because futility was addressed in People in Interest of K.D., 155 P.3d 634 (Colo.App.2007)(K.D.), decided during the pendency of this appeal, we invited the parties to submit supplemental briefs on this issue.
In her supplemental brief, stepmother argues that once an Indian parent is shown to have abandoned a child, any effort to reunify the child with that parent would necessarily be futile, and thus cannot prevent the breakup of the Indian family. We do not read K.D. so broadly.
In K.D., a division of this court recognized that a petitioning party need not "persist with futile efforts" by providing further services to an Indian parent who has already received services which did not reunify the family. K.D., 155 P.3d at 637. The division did not hold that all such efforts were excused because the Indian father was alleged to have abandoned the child. Indeed, abandonment was not at issue.
The social services department in K.D. had sought to terminate parental rights in the dependency context without offering the Indian father a treatment plan because he suffered an emotional illness under sections 19-3-508(1)(e)(I) and 19-3-604(1)(b), C.R.S.2006, and therefore no plan could address his parental unfitness. The division held that the department was not required to offer the father additional services to comply with the active efforts requirement under the ICWA because he had already received services during two prior dependency proceedings. K.D., 155 P.3d at 637. In contrast, here stepmother did not show that any efforts had been made to reunite the child with mother.
Stepmother's reliance on In re Baby Boy Doe, 127 Idaho 452, 902 P.2d 477 (1995); In re Adoption of S.S., 167 Ill.2d 250, 212 Ill. Dec. 590, 657 N.E.2d 935; and In re Adoption of Baby Boy L. for the proposition that a private petitioner need not prove active efforts to prevent the breakup of the Indian *25 family is also misplaced. In re Adoption of Baby Boy L. did not address the issue because it adopted the existing Indian family exception and concluded the ICWA did not apply. The In re Baby Boy Doe court upheld the trial court's finding that active remedial efforts had been provided. In re Baby Boy Doe, 127 Idaho at 458-59, 902 P.2d at 483-84. In In re Adoption of S.S., the active efforts issue was not before the court. We discern no basis for concluding that by not mentioning this requirement, the court intended to eliminate it.
We need not decide whether in certain extreme cases where a parent is found to have abandoned an Indian child, the failure to show reunification efforts might be excused because they would be futile. The facts showing abandonment will vary widely from case to case, and determining futility in any given case would be a factual matter necessarily left to the trial court. In re Baby Boy Doe, 127 Idaho at 459, 902 P.2d at 484.
Here, despite its finding of abandonment, the trial court also found that stepmother could have engaged in active efforts to provide remedial services and rehabilitative programs by informing the child of the identity of his biological mother and seeking to preserve the relationship between them by showing the child pictures of her. Stepmother does not challenge this finding as lacking record support and admits that she made no such efforts. Thus, we decline to consider her assertion that no efforts could have prevented breakup of the Indian family. Nor do we decide whether these efforts alone would have been sufficient.
Stepmother correctly points out that under Colorado's dependency law, treatment plans are required only when the parents are known to, and have been actively engaged with, their children. See §§ 19-3-508(1)(e)(I), 19-3-604(1)(a), C.R.S.2006. However, this is not a dependency case. Further, state law could not overcome the ICWA's active efforts requirement. Middleton v. Hartman, 45 P.3d 721, 731 (Colo.2002).
Citing People in Interest of A.N.W., 976 P.2d 365 (Colo.App.1999), stepmother next asserts that the trial court should have the flexibility to excuse her from the active efforts requirement. The division in that case, however, discusses whether good cause existed for the trial court to retain jurisdiction instead of transferring the matter to a tribal court or to deviate from the ICWA's placement preferences. People in Interest of A.N.W., 976 P.2d at 367-69. The ICWA provides for a good cause exception in both instances. 25 U.S.C. §§ 1911(b), 1915(a) (2001). It provides no good cause exception to the requirement of making active efforts to provide rehabilitative services. See Riley v. People, 104 P.3d 218.
We also reject stepmother's argument that her failure to satisfy the active efforts requirement should be excused because the trial court found that "continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child" under 25 U.S.C. § 1912(f) (2001).
The ICWA requires a petitioner to prove both active efforts and likelihood of serious damage to the child from continued custody by a natural parent. 25 U.S.C. § 1912(d), (f). The active efforts inquiry focuses on reunifying the broken Indian family. See K.D., 155 P.3d at 637. The serious damage to the child inquiry focuses on whether damage to the child could result were custody to be continued. See, e.g., Carl N. v. State, 102 P.3d 932, 936-37 (Alaska 2004)(the father did not have the requisite stability and parenting skills to parent a severely disturbed child, and a return to the father's custody would cause his child serious psychological damage); People in Interest of O.S., 701 N.W.2d 421, 427-28, (S.D.2005)(the mother's long-standing alcohol abuse problem, unsuccessful attempts at rehabilitation, and altercations with her child's father supported finding under 25 U.S.C. § 1912(f)).
Thus, 25 U.S.C. § 1912(f) is not an alternative to active efforts, which assure an attempt to reunify the Indian family. Rather, it affords the basis for terminating parental rights by recognizing that the child may be at serious risk if returned to parental custody, notwithstanding prior active efforts to *26 reunify as required by 25 U.S.C. § 1912(d). Because these issues involved different times in the petitioning process, turn on different evidence, and further different purposes, we will not create a judicial exception to the active efforts requirement based on a finding of damage under 25 U.S.C. § 1912(f).
We recognize the anomaly in refusing to terminate parental rights because all of the requirements under the ICWA have not been met where, if this matter were not an ICWA case, state law emphasis on best interests of the child would likely require termination. To the extent that failure to comply with all of the ICWA's requirements may sometimes preclude a termination of parental rights that would occur under Colorado's stepparent adoption statute, Congress deemed such a result necessary to preserve tribal interests. Further, during the allocation of parental rights proceeding here, the child's best interests must be considered. See §§ 14-10-123, 14-10-123.4, C.R.S.2006.
Having identified efforts that stepmother could have undertaken but finding that she made no efforts, the trial court need not have addressed section 1912(f). However, the court's section 1912(f) finding does not absolve stepmother of the consequences of the lack of efforts at reunification. Had stepmother taken the steps the court identified, the child may not have viewed mother as a stranger, which was a factor in the court's conclusion under section 1912(f).
Stepmother notes in her supplemental brief that she filed a postpetition treatment plan, to which mother objected. Before the hearing, the trial court denied her motion to implement a treatment plan. She did not seek an interlocutory appeal of this order under C.A.R. 21, did not argue at the hearing that this motion constituted adequate active efforts under the ICWA, and did not raise the issue in her opening brief. Therefore, we do not consider it. See Tate v. Colo. Dep't of Revenue, 155 P.3d at 645 (we do not consider issues not raised in the trial court); In re Marriage of Smith, 7 P.3d 1012, 1017 (Colo. App.1999) (issue raised for the first time in appellant's reply brief will not be considered).
Accordingly, we affirm the trial court's holding that stepmother's failure to show active efforts as required by 25 U.S.C. § 1912(d) precludes termination of mother's parental rights through this stepparent adoption.

VII. Cross-appeal
Once the trial court concluded that stepmother had failed to make active efforts to reunify the Indian family, termination of mother's parental rights through stepmother's petition to adopt the child could not occur under the ICWA. If stepmother brings a new petition under the Colorado stepparent adoption statute, she will again have to prove abandonment or failure to support for the year preceding the filing of that new petition. In re R.H.N., 710 P.2d 482, 487 (Colo.1985). She would also have to both show that active efforts at reunification were made and prove, beyond a reasonable doubt, that as of the time of the new petition, the child was subject to serious damage from mother's custody under 25 U.S.C. § 1912(f). Cf. In re Matthew Z., 80 Cal.App.4th 545, 555, 95 Cal. Rptr.2d 343, 350 (2000) (findings under 25 U.S.C. § 1912(f) must be made with current evidence).
Therefore, we need not address mother's argument on cross-appeal that insufficient evidence supported the findings of abandonment and failure to support, and of substantial risk of damage, because these findings would not be binding in a new petition. See In re Tonko, 154 P.3d 397, 405 (Colo.2007) (issue preclusion bars relitigation of an issue when the issue sought to be precluded is identical to an issue actually and necessarily determined in a prior proceeding); see also People v. Washington, 179 P.3d 153, ___ (Colo.App. 2007)(the law of the case doctrine applies to decisions of law, not factual questions, and is not followed if the ruling is no longer sound due to changed conditions).
The order is affirmed.
*27 Judge LOEB and Judge KAPELKE[*], concur.
NOTES
[*] Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S.2006.